STATE ex rel. SHORT, Atty. Gen., v. BENEVOLENT INV.& RELIEF ASS'N et al.

No. 15650—Opinion Filed Nov. 18, 1924.

Rehearing Denied Jan. 2, 1925.

(Syllabus.)

1. Corporations—Corporation's Title to Real Estate Though Holding Unauthorized by Charter.

A conveyance of real estate by the owner to a corporation, duly organized under the laws of the territory of Oklahoma, or of the state of Oklahoma, may vest title to such real estate in such corporation although the acquiring or holding of such real estate be beyond the power granted to such corporation by its charter.

2. Escheat—Illegal Holding of Real Estate by Corporation—Bona Fide Conveyance Before Escheat Proceedings.

Although a corporation may have acquired real estate in such a manner as to render it subject to be escheated to the state by a proper action begun for that purpose, yet if such corporation shall, prior to the commencement of such proceeding to escheat, make a bona fide sale or conveyance of said real estate for value, the purchaser at such sale will take good title thereto.

Error from District Court, Lincoln County; Hal Johnson, Judge.

Action by the State on relation of George F. Short, Attorney General, against the Benevolent Investment & Relief Association and others. Judgment for defendants, and plaintiff brings error. Affirmed.

George F. Short. Atty. Gen., and John Barry and Leon Hirsh, Asst. Attys. Gen., for plaintiff in error.

Randolph, Haver & Shirk, R. C. Allen, H. M. Gray, Thos. G. Andrews, Clyde L. Andrews, Andrews & Andrews, Nadler & Nadler, Erwin & Erwin, and J. T. Blanton, for defendants in error.

GORDON, J. This action was begun in the district court of Lincoln county, by the state of Oklahoma, on the relation of the Attorney General, against the Benevolent Investment & Relief Association, and numerous other defendants. having for its purpose the escheat to the state of certain lands consisting of about 40 acres forming what is known as Key West town site. In the action. application is made for the appointment of a receiver pendente lite to take charge of the land and of the oil produced from certain wells which have been drilled upon the land. Upon the trial, the district court, after hearing the evidence, denied the application for the appointment of a receiver, and, upon the motion of defendants. dismissed the petition. In the journal entry so dismissing the petition and denying the receivership, the court referred to certain preliminary pleadings and motions filed by defendants as having been treated by the parties as demurrers to the petition. and in such journal entry said motions are by the court sustained. From this action of the court in sustaining the demurrer and motions and in denying the application for the appointment of a receiver the state of Oklahoma has appealed.

The defendant, the Benevolent Investment & Relief Association, was a corporation, which obtained its charter from the territory of Oklahoma, on February 18, 1905. Little is known of its transactions until it purchased the land involved here. On the 14th day of January, 1907, this corporation purchased this land from Lemon Petty and Vinnie Petty, his wife, being—

"A piece, parcel, or strip of land forty (40) rods wide and one hundred and sixty (160) rods long off of the east side of the following described land, to wit: Lots one (1) and two (2) and the west half (1-2) of the northwest quarter (1-4) of section twelve (12), township fourteen (14) north of range six (6) east, I. M., and containing 40 acres off the east side of the said 118 and 55-100 acre tract."

This property after its purchase is referred to as Key West town site. And it is agreed in the briefs of the parties herein that soon after the purchase and prior to the entry of Oklahoma into statehood, the defendant. Benevolent Investment & Relief Association, platted the land into town lots and began to sell and dispose of the same. Practically all of this property was disposed of by this corporation prior to the beginning of this action. In fact, it is admitted in the briefs that it has all been disposed of. The property became valuable several years ago by reason of the supposed presence of oil thereunder. and various transfers were made of the lots and valuable oil and gas leases and sales of royalty interests were made, thus necessitating the large number of defendants here. On December

28, 1923, the drilling of an oil well was begun upon this so-called town site; this well began to produce oil on May 10, 1924; this action was begun on July 8 1924. While the record in this case is voluminous, the questions at issue are few. It is contended on the part of the state that that part of the charter of the Benevolent Investment & Relief Association which provides for the holding and selling of real property was void, as being in contravention of the law and public policy at the time the charter was issued. It is further contended by the state that while the corporation had no power to deal in farm land, yet, upon the execution of the deed by Lemon Petty to the corporation, title vested in the corporation; that the corporation had no power to divest itself of this title, and that therefore such title remained in the corporation until these escheat proceedings began about 17 years thereafter, and that for the purposes of this suit, title is now in the corporation, notwithstanding the purported conveyances executed thereby.

The contentions of the state are set forth in five paragraphs of its brief, which are as follows:

"First. A corporation organized under the laws of Oklahoma Territory could not be granted the authority to deal in farm lands.

"Second: That the charter grant of power to wit, the articles of incorporation of the Benevolent Investment & Relief Association, not giving to it the right to do a town site business, an attempt upon the part of said corporation to do a town-site business was ultra vires in the strictest sense of the word.

"Third. That where a contract or conveyance attempted to be made by a corporation is ultra vires in the strictest sense of the word on account of a total lack of authority and capacity on the part of the corporation, no rights may be claimed under or by virtue of said contract or conveyance.

"Fourth. That under the provisions of section 11321, Comp. Stats. 1921, land held by a corporation in contravention of section 2, article 22, of the Constitution, is illegal and unlawful and is subject to escheat to the state of Oklahoma.

"Fifth. That estoppel or laches does not run against the state in escheat proceedings."

These propositions are further limited in the brief of plaintiff in error to two questions, which are: First, Has the Benevolent corporation transferred title to the various town lots in Key West? Second, may the state question the ultra vires acts of this corporation? On the other hand, it is contended by defendants in error, that the power granted in the charter to acquire, own, and sell farm lands was not in violation of any statute law of the territory of Oklahoma, and that the charter did not violate public policy in this respect. Further, that when this charter was granted, the right had been given by the territorial Legislature to a corporation to acquire lands for town-site purposes and for additions to town sites, with the right to plat subdivisions and sell such lands. That the land in question was purchased for town-site purposes and was subdivided and platted and sold as a town site; that the language of the charter is broad enough to authorize such dealings in land. It is further contended by defendants that if that portion of the charter above specified was void and conferred no right upon the corporation to buy this land, yet, when the corporation did purchase the land, it had the power to sell the same and divest itself of title before and up to the time of a proceeding to escheat by the state was begun. It is contended that the law authorizing escheats, as it now stands upon the statute books, is void, in that it seeks to amend an act of the Legislature which has heretofore been declared void by the courts of this state, and that for this reason the proceedings here must fail as being unauthorized by law.

The purposes for which the corporation in question was organized as expressed in its charter were:

"To transact a benefit loan and investment business on the association plans, to bargain and sell, have and hold lease and assign, transfer and exchange real and personal property embracing farm and farm supplies, stores and store house supplies. To carry on a general wholesale and retail commercial business. To operate farms and parts thereof and to do work of charity."

It is contended by plaintiff in error that at the time this corporation was organized, the territory of Oklahoma did not permit the organization of corporations for the purpose of dealing in or owning farm lands, and that though the statutes provided that corporations might organize with the power of "locating, laying out, improving town sites, and buying and selling real estate therefor, including the sale and conveyance of the same in lots, subdivisions, or otherwise," yet the language of the charter was not such as would include this right. From the action of the corporation it appears that the land involved here was purchased for town-site purposes, and certain it is that it was platted and laid off into lots and blocks,

with streets and alleys looking to the formation of a town site. But whether the corporation had the power to hold the land as farm land or whether the language of the charter would properly be so construed as to give it the right to do a town-site business or to plat the land and sell it in the form of lots, is not material here in view of our conclusion upon what we deem to be the controlling principle in this case.

The principal question presented is that touching the power of the defendant corporation to transfer title to land taken by it as a result of a conveyance though the taking was in violation of the Constitution and laws of the state. If, on the one hand, it acquired title nowithstanding a prohibition of law, and had no power to divest itself of title so acquired, then it will become necessary here to go further and determine whether under its charter it had power to acquire and hold this particular land. On the other hand, if it had power, notwithstanding the defect in its charter, to dispose of the land, and has disposed of same before the beginning of this action, no other matter need be considered here. It is, therefore, to this question that we will primarily devote our consideration.

The case of Myatt v. Ponca City Land & Improvement Co., 14 Okla. 189, 78 Pac. 185, cited by plaintiff in error upon this proposition, holds the charter of the Ponca City Land & Investment Company void because that corporation was organized in Kansas, with purported authority to operate solely in Oklahoma. Notwithstanding the invalidity of the charter, the court holds that a grantor may successfully convey to such a corporation; that the title passes to the corporation, and that no one save the state can question such title. On the other hand, it is held that where a so-called corporation, acting under a charter wholly void, seeks to acquire title and possession by action, the invalidity of the charter may be successfully pleaded against such attempt.

The case of Lafferty v. Evans, 17 Okla. 247, 87 Pac. 304, cited by plaintiff in error to substantiate its contention upon the point at issue, is not authority here, for the reason that in that case there was, in effect, no corporation either to take or to convey title. The so-called corporation involved was Ponca City Land & Investment Company, whose charter had been held void in Myatt v. Ponca City Land & Investment Company, supra. The suit in that case was for the purpose of foreclosing a mortgage securing a note given as the purchase price of a

lot of ground. The so-called corporation was plaintiff; the court referred to the opinion in the Myatt Case, supra, holding the charter void, and held that the party occupying the lot under the purported grant was a trespasser, as there was no existence in the grantor. The first section of the syllabus is:

"A conveyance by a corporation of real estate and a warranty of title, when such corporation is unauthorizedly attempting to exercise corporate powers where no power as a corporation has in fact been granted to it, is void."

Here, the meaning is clear, but the expression "A conveyance by a corporation" is unfortunate. In law, the Ponca City Land & Investment Company was never a corporation and had no power to act as such. In the case before us, the power to act as a corporation is not denied, but the claim is that it exceeded the power granted to it. It is argued by plaintiff in error that if the defendant, Benevolent Investment & Relief Association, had purchased this 40 acres of land and had, without changing the nature and use of the property, sold the entire tract to some person, there might have been some basis for the argument that the purchaser would have been justified in thinking that the land was originally necessary for corporate purposes, but that when it was cut up into town lots and thus sold, it was an advertisement to the public that it was violating the law. We are unable to follow this line of reasoning. If the primary proposition, as stated by plaintiff in error, that the taking of property being ultra vires, no power existed in the corporation to dispose of it, is correct, the question of notice to the purchaser is wholly immaterial. Again, it appears that the power to hold and plat land for town-site purposes, being authorized by the Legislature, would appear to be more nearly in line with the authority of the corporation than the suggestion of its acquisition and holding as formerly stated. If the corporation lacked the power to transfer, it is an end of the argument, but that is the question at issue. To sustain the proposition of the lack of power of the corporation to transfer, plaintiff in error cites us further to the case of Central Transportation Co. v. Pullman Palace Car Co., 139 U. S. 24, 35 L. Ed. 55. In that case the action was upon a contract; its purpose was to recover a sum of money due according to the terms of the contract. The defendant pleaded that the contract was ultra vires. At the trial, the plaintiff offered in evidence its charter and the con-

tract sued upon. This evidence was by the trial court excluded. Plaintiff then offered to prove that under the contract its cars, contracts, and patents had been delivered to defendants, which retained them until July 1, 1886, when it tendered them back to plaintiff. This evidence was by the court excluded. The Supreme Court in affirming the judgment said on page 64:

"The clear result of these decisions may be summed up thus: The charter of a corporation, read in the light of any general laws which are applicable, is the measure of its powers, and the enumeration of those powers implies the exclusion of all others not fairly incidental. All contracts made by a corporation beyond the scope of those powers are unlawful and void, and no action can be maintained upon them in the courts, and this upon three distinct grounds; the obligation of everyone contracting with a corporation, to take notice of the legal limits of its powers: the interest of the stockholders, not to be subjected to risks which they have never undertaken; and, above all, the interest of the public, that the corporation shall not transcend the powers conferred upon it by law."

And on page 68:

"The view which this court has taken of the question presented by this branch of the case, and the only view which appears to us consistent with legal principles, is as follows:

"A contract of a corporation which is ultra vires, in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the Legislature, is not voidable only, but wholly void, and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it."

Here the court was passing upon the attempt to enforce a contract found to be ultra vires. The court held that such a contract was void: that no action could be successfully predicated thereon. In the discussion of the question the court adverts to the matter of the status of the parties to such a contract where the same has been fully executed, and quotes with approval from those cases holding that even where such a contract has been fully executed, no action will lie upon such unlawful contract. However, the decision rendered merely affirms the doctrine that no recovery may be had in an action founded upon such a contract even though property has been delivered to defendant pursuant to the contract. As we understand it, such a contract may not be made the foundation of an action, and where the contract has been executed, neither party may successfully invoke the jurisdiction of the court to obtain any right by reason of such contract. The effect, in the case of an executed contract, is to leave the parties where they are found. The questions at issue here are wholly apart from those discussed in the opinion supra. The question here presented is whether, when the defendant corporation has taken title and has passed the record title and possession to third parties, the state, as the moving party in an action to escheat, may treat such transfer as a nullity.

The case of Stacy v. Glenn Ellyn Hotel & Springs Co. (Ill.) 79 N. E. 133, cited by plaintiff in error, involves the question of a right of plaintiff to the privilege of the grounds of the defendant company. Plaintiff had bought a lot adjoining defendant's ground and upon the understanding that defendant had dedicated its grounds to the public use. Defendant had issued to plaintiff a certificate showing him entitled to the privileges of the grounds and was threatening to close its grounds and deprive plaintiff of this privilege. The court held that the proof of dedication to the public was insufficient and that such dedication would have been beyond the power of the directors of the defendant corporation. It is further held that the certificate was issued to plaintiff without any consideration, and was therefore void. It will be noted that plaintiff was the actor in the suit, seeking certain rights under his contract to the same effect as was the plaintiff in the case of Central Transportation Co. v. Pullman Palace Car Co., supra.

The case of People ex rel. Moloney v. Pullman's Palace Car Co. (Ill.) 64 L. R. A. 366, involved the question of the right of the state to forfeit a charter granted by special act of the Legislature for misuser. The decision was by a divided court, and the question involved was whether or not the corporation had so conducted itself as to justify a forfeiture. The question of estoppel on the part of the state was incidentally involved. Nothing in that case assists us in the solution of the case now before us. Plaintiff in error contends that in an escheat action the defendants must resist on the strength of their title and not on the weakness of the state's claim. To sustain his doctrine, they cite Donaldson v. State (Ind.) 101 N. E. 485. But in that

case defendant was the actor, claiming in his cross-petition the title to the land involved.

In State v. Lancaster, 119 Tenn. 638, 105 S. W. 858, 14 L. R. A. (N. S.) 991, the question was as to the right of the state to contest a will claimed to be void, and hardly seems applicable here. It is admitted by plaintiff in error that in the case of an alien and of a corporation authorized to buy and sell land and to hold land for a certain number of years, the alien may make valid conveyance at any time before escheat proceedings are begun, and that the corporation may also after the expiration of the time limited by law make valid conveyance at any time before the beginning of an action by the state; this being upon authority of Louisville School Board v. King (Ky.) 107 S. W. 247, 15 L. R. A. (N. S.) 379, hereinafter discussed. But plaintiff in error seeks to differentiate the case here on the ground that the defendant corporation was without power to dispose of the land. It is argued that this defendant was wholly without power to deal in land, hence had no power to take or convey. Yet the power to take somehow inheres in the corporation, for, as said by the plaintiff in error, the party selling must divest himself of the title by his deed. The title must vest somwhere, and therefore of necessity it vests in the corporation. The result must be that the corporation so taking will, as a matter of law, accumulate this and such other titles as may be conveyed to it, and, if the argument is correct, hold them, thus being permitted by operation of law to do the very thing which is against the policy of the law.

Plaintiff in error seeks to differentiate between acts which are merely ultra vires and acts which are strictly ultra vires. We are unable to follow the logic of this suggestion. The words "ultra vires" mean "beyond the power," and there are no degrees contained in the definition. It is an ultimate term, and therefore the discussion as to the holding of land by a corporation beyond its power must treat all such cases alike.

Section 1, art. 22, of our Constitution provides as follows:

"No alien or person who is not a citizen of the United States, shall acquire title to or own land in this state, and the Legislature shall enact laws whereby all persons not citizens of the United States, and their heirs, who may hereafter acquire real estate in this state by devise, descent, or otherwise, dispose of the same within five years upon condition of escheat or forfeiture to the state: Provided, this shall not apply to Indians born within the United States, nor to aliens or persons not citizens of the United States who may become bona fide residents of this state.

"And provided, further, that this section shall not apply to lands now owned by aliens in this state."

And section 2 provides:

"No corporation shall be created or licensed in this state for the purpose of buying, acquiring, trading or dealing in real estate other than real estate located in incorporated cities and towns and as additions thereto; nor shall any corporation doing business in this state buy, acquire, trade or deal in real estate for any purpose except such as may be located in such towns and cities and as additions to such towns and cities, and further except such as shall be necessary and proper for carrying on the business for which it was chartered or licensed, nor shall any corporation be created or licensed to do business in this state for the purpose of acting as agent in buying and selling land: Provided, however, that corporations shall not be precluded from taking mortgages on real estate to secure loans or debts or from acquiring title thereto upon foreclosure of such mortgages or in the collection of debts, conditioned that such corporation or corporations shall not hold such real estate for a longer period than seven years after acquiring such title."

These sections have been held by this court not to be self-executing. Pursuant to these sections an act of our Legislature was passed providing procedure in actions of escheat and this act has been by this court held unconstitutional. Parwal Investment Co. et al. v. State, 71 Okla. 121, 175 Pac. 514.

The Legislature has in 1919 enacted an amendment to the escheat statute intended to cure the defects in the former statute and this amendment is found in section 11321, Comp. Stat. 1921. The validity of this amendment is vigorously assailed by defendants in error. We deem it unnecessary to consider the questions so raised upon the amended statute, as it is, in our judgment, immaterial in view of the conclusion we have formed. Upon the question before us here, the leading case appears to be that of Louisville School Board et al. v. King (Ky.) 107 S. W. 247, 15 L. R. A. (N. S.) 379. In that case it is held:

"One who, in good faith and for a valuable consideration, buys corporation land before an action has been brought to establish an escheat to which it is subject, because the corporation has held it when it was unnecessary to its purposes, contrary to the provis-

ions of the Constitution, acquires an indefeasible title to it, although the state is authorized by statute to take possession or sue for its recovery, without office found."

The question involved was upon a chain of title which included a deed from a Louisville banking company. The banking company had held the land in violation of the Constitution and laws of the state. After the transfer by this company, the commonwealth of Kentucky sought title to the land by escheat proceedings. The court held that good title had passed to the grantee of the banking company, and that in such case the corporation had power to transfer until escheat proceedings were begun. In the body of the opinion, it is said:

"The question before us has not heretofore been presented to this court for adjudication; but ample authority may nevertheless be found, both in the text-books and decisions of courts of last resort in other states, to support the conclusion expressed above. The general rule is that, although a corporation may be disabled or forbidden by the organic or statute laws of a state from holding land except for particular purposes, or from holding land beyond a prescribed limit or quantity, yet, if it does hold land in the face of such disabilities or prohibitions, its title will be good except as against the state alone; and that it will be deemed to have a good title until its title is invalidated in a direct proceeding instituted by the state for that purpose; and this rule prevents the title of the corporation from being assailed by its grantor or grantee."

In Thompson on Corporations, vol. 5. p. 5797, we find:

"The rule also operates in such a way, that although the state might, in a direct proceeding for that purpose, have overthrown the title of the corporation and escheated the property to its own use, yet, not having done so, the corporation may in the meantime convey an indefeasible title to another of whatever estate in the lands had been conveyed to or acquired by it."

And in 10 Cyc. Law & Proc. p. 1135, the law is laid down as follows:

"As the jus disponendi is an incident of the ownership, whenever a corporation has the power to own land it has the power to dispose of it in like manner as a natural person might do. The law goes further. Although, as against the state, the corporation may not have the power to hold land to which it has acquired a fee-simple title; and although it may hold it subject to the constant risk of intervention by the state,— yet, until the state intervenes to escheat it, the corporation may transfer it to another and pass a good title to him. It may grant to another corporation the right to use such land for any purpose within the powers of the grantee, although such purpose was not within the powers of the grantor. Although a corporation may not have the power to hold particular land, for the reason that it is not required for the purposes of the corporation, yet it may sell such land and pass a good title to the purchaser."

See, also, Fritts v. Palmer, 132 U. S. 282, 33 L. Ed. 317.

To the same effect is Oregon Mortgage Co.. Ltd.. v. Carstens (Wash.) 47 Pac. 421. In that case it was held that the taking of the land by an alien corporation in satisfaction of a mortgage indebtedness was not a violation of the constitutional provision, but in discussing the matter, it is said by the court:

"It is further contended by the plaintiff that its title so taken would be only a defeasible one at least, and that it could only be attacked by a direct proceeding on the part of the state, and that a deed of the land by the plaintiff to a party entitled to hold it, before the state should undertake to have the conveyance to it set aside, would transfer a good title; and we are of the opinion that this position is well taken, for the objection would then be obviated; and conceding this to be true, the deed tendered by the plaintiff to the defendant would have passed to the defendant an indefeasible title. There are a number of authorities to which our attention has been called, upon provisions very similar to the one here in question, and the tendencies of the decisions elsewhere, although under somewhat different provisions, but all for a like pupose, is to strongly sustain the plaintiff here. 6 Thomp Corp. 7918; Phillips v. Moore, 100 U. S. 208; Cross v. DeValle, 1 Wall. 5; Carlow v. C. Aultman & Co. (Neb.) 44 N. W. 873; Mortgage Co v. Tennille (Ga.) 13 S. E. 158; Williams v. Bennett (Tex. Civ. App.) 20 S. W. 856."

The same holding is found in Abrams v. State (Wash.) 88 Pac. 327. The question there involved was the right of an alien to hold land in the state. In the body of the opinion, it is said:

"Though during the life of an alien the state, by proper proceedings, could have declared an escheat of land held by her in contravention of the express provisions of Const. art. 2. sec. 33, upon her death it lost that right, the land descending to her heirs."

See, also, State ex rel. Atkinson v. World Real Estate Commercial Co. (Wash.) 89 Pac. 471; Prentiss v. How (Wash.) 146 Pac. 388; 7 R. C. L. p. 568; 10 R. C. L. 608; 14a C. J. 2502; Mansfield v. Neff (Utah) 134 Pac. 1160; Smith v. Sheeley, 12 Wall. 358, 20 L. Ed. 430; Milton v. Crawford (Wash.) 118

Pac. 32; Louisville Ins. Co. v. Commonwealth (Ky. App.) 143 S. W. 1044.

The overwhelming weight of authority sanctions the doctrine that a corporation such as is involved here may, at any time before escheat proceedings are begun, divest itself of title to lands held in contravention of law by a conveyance in good faith for value, and a purchaser from such corporation takes good title by virtue of such conveyance. The policy of the law, as laid down by the courts of this state, does not favor escheats. Ross v. Wertz, 70 Okla. 56, 192 Pac. 968; In re Hawkins, Parker et al. v. Hawkins, 97 Okla. 195, 223 Pac. 396; State v. Prairie Oil & Gas Co., 64 Okla. 267, 167 Pac. 756.

When the Benevolent Investment & Relief Association took title to the land involved here, there was no statute of escheat affecting it in force. It began the sale of its lots prior to the advent of statehood. This sale was continued year after year, and the larger portion of the land appears to have been disposed of before the passage of the Act of 1919 relating to escheats. After the passage of this act, transfers of the lots continued to be made. It was found that the land was underlaid with oil. Numerous leases were executed; various sales of royalty interests were made, and prior to any action on the part of the state large sums of money were spent in developing the production of oil. The state now seeks the escheat of all this property. Whether the doctrine of estoppel may be invoked against the state under such circumstances, it is not necessary here to decide, but we mention these conditions as tending to show that it is hardly conceivable that in such a case, where a corporation takes property, even though in violation of law, it will be deemed to hold title for such a period of time and under such conditions to await the pleasure of the state in beginning an action of escheat. The object of the statute is to prevent the holding by the corporation. The transfer by the corporation has effected the object of the statute. To remedy the mischief, the state may, at any time, begin its action to escheat the land before its transfer or to forfeit the charter.

It is our conclusion that where in such case the corporation, prior to the beginning of an action by the state, transfers such land in good faith and for value, the purchaser takes title thereby. Upon the trial it was shown that the land in question had been transferred. The state has tried the case in the court below and briefed it here upon the theory that title vested in the corpora-

tion and that the corporation had no power to divest itself of title to such land. It is admitted in the brief of the state that deeds have been executed by the corporation prior to the beginning of this action, which would transfer the title if the power were in the corporation so to do. The question of good faith of such transfer is not raised, and it is upon this issue that we determine this case. We give no expression of our views as to the right of the corporation under its charter to take and hold the town site in question, or to divide the land into lots and sell the same. Nor have we considered the question of the validity of the 1919 law of escheat nor the question of the right to plead estoppel against the state in such a case, believing that any expression upon these questions, being not necessary to the determination of the point at issue, would not be binding in future cases. We have been favored with thorough and excellent briefs from all parties in this case, and an examination and consideration of these briefs has been of invaluable assistance here. The judgment of the trial court is affirmed.

McNEILL, C. J., and NICHOLSON, JOHNSON, BRANSON, and WARREN, JJ., concur.