STATE of Texas, Appellant,

v.

Smith WALDEN, Appellee.

No. 6289.

Court of Civil Appeals of Texas.

Beaumont.

May 7, 1959.

Rehearing Denied May 22, 1959.

Supplemental Motion for Rehearing Over-
ruled June 17, 1959.

Will Wilson, Atty. Gén., John Milton Richardson, Asst. Atty. Gen., for appellant.

Parker & Parker, Beaumont, for appellee Walden.

A. M. Huffman, Beaumont, for appellee Hammons.

McNEILL, Justice.

The State of Texas, under the provisions of Acts 28th Leg., Regular Session 1903, ch. 98, p. 129, brought suit against Smith (Smyth) Walden, Texas and New Orleans Railroad Company of Texas, Clara Hammons, and Humble Oil and Refining Company to forfeit and to remove cloud from title on a tract of land situated in Tyler County, Texas (T. & N. O. R. R. Co. No. 7, Block No. 1), and acquired by the Texas and New Orleans Railway Company under the provisions of "an act to encourage the construction of railroads in Texas by donations of lands", Acts 5th Leg., 1854, ch. 15, p. 11; 3 Gammel 1455, and "an Act to amend the third section thereof", Acts 8th Leg., 1860, ch. 55, p. 70, and by Acts 13th Leg., Regular Session 1873, ch. 103, p. 180.

Defendants Texas and New Orleans Railroad Company and Humble Oil and Refining Company answered and disclaimed any interest in the land in controversy and were dismissed from suit.

Smith Walden filed an answer and cross action for the land. Clara Hammons answered by not guilty and general denial.

The cause was tried before the District Court of Tyler County without a jury and judgment was entered by the court denying the relief sought by the State of Texas, and granting recovery to Smith (Smyth) Walden for so much of T. & N. O. R. R. Co. Survey No. 7, Block 1 as is not in conflict with senior surveys in the area and recovery by Walden of entire survey as against his co-defendants and the State. The State appeals.

The facts are undisputed. On June 23, 1860, Land Scrip Certificate No. 439 was issued to Texas and New Orleans R. R. Co., by virtue of the general laws of the 5th Leg., 1854, ch. 15, p. 11; 3 Gammel 1455, providing for grants of land to railroad companies completing certain railroad construction in the state. The land was surveyed in Polk County thereunder, but the survey was abandoned because it was in conflict with prior patented surveys. The original certificate or scrip was returned to the General Land Office and filed December 1, 1874. By virtue of Acts of the 13th Leg., regular session, 1873, ch. 103, p. 180, on March 29, 1878 the Land Commissioner issued a certified copy of the original land certificate No. 439 known as a "floated" certificate in lieu of the original. By virtue of the "floated" certificate the land involved in this suit was surveyed on September 16, 1878, and the floated certificate and field notes were filed in the General Land Office on October 31, 1878. Corrected field notes, together with a map of the survey, were certified to and recorded by the County Surveyor of Tyler County on May 6, 1891, and were filed in the General Land Office on May 16, 1891. This was the last material official act regarding this located certificate until 1937. January 25, 1916, for a cash consideration of $500.00 the T. & N. O. R. R. Company conveyed to W. A. Barnes all its right, title and interest in and to the land involved and Certificate 439. Appellee Smith (Smyth) Walden acquired Barnes' interest thereto by a regular chain of title. On October 4, 1937, the Land Commissioner executed a timber lease to P. E. Hammons to the merchantable timber on the tract. In the year 1943 Bascom Giles, Land Commissioner of the State, executed a deed, dated June 1, 1943, conveying the timber on the land to Warren Lumber Company. No patent to the tract involved has ever been issued by the Land Commissioner.

The State attacks the judgment rendered through two points. The first urges that the trial court erred in not forfeiting T. & N. O. R. R. Co. Survey No. 7, Block 1, to the State and removing cloud from the title thereto as provided for and required under Acts of the 28th Regular Session of the Leg., 1903, ch. 98, p. 129; and the second, urges that the trial court erred in adjudging that appellee Smith (Smyth) Walden is entitled to have a patent issued by the State as to said section or survey that is not in conflict with any senior survey or surveys, if any.

Appellee counters these two points with the following points: First, T. & N. O. R. R. Co., was under no duty to alienate its interest in the section prior to January 25, 1916, the date that it did so, because the Act of 1903 or at least the second section thereof is void. Second, that if the Act of 1903 is not void, still it does not give appellant an action to forfeit the land in controversy. Third, the forfeiture provisions of the Act of 1903 have been repealed. Fourth, the trial court erred in excluding from evidence the legislative history of the Act of 1903 as shown by the House and Senate Journals, R.S. 28th Leg. of 1903. And fifth, that the trial court erred in excluding from evidence the legislative history of the Act of 1903, as shown by the legislative file of Senate Bill 201 of said session of the Legislature.

We will not undertake to discuss the points or counterpoints separately. Basically, two Acts of the Legislature bear heavily upon the questions in this case. The first is the Act of 1854 described in the opening paragraph hereof. To encourage the construction of railroads the legislature provided in Sec. 1 of this Act that for every mile of railroad constructed and put in running order the State would grant 16 sections of land; Sec. 6 provided that the Land Commissioner should issue land certificates of 640 acres each, equal to 16 sections per mile for roads so completed, which when located and surveyed by a district surveyor and the certificates, field notes and maps of the surveyor were returned to the General Land Office it was the duty of the Commissioner to issue to the railroad company patents for each odd section of said surveys. Section 9 provided that the railroad company should alienate all such land not needed for railroad operations obtained, in various periods not exceeding 12 years from the time of "acquiring" such lands or real estate. Section 10 of the Act provided that upon failure of the company to alienate any such lands within the time provided it became the duty of the Comptroller of Public Accounts to advertise such lands for sale, sell same and deposit the net proceeds with the State Treasurer to the credit of the company. The construction of this Act will be commented upon hereinafter.

The other basic Act involved is the Act of 1903. This is described as Senate Bill No. 201, Acts, 28th Leg., R.S. ch. 98, p. 129, and is entitled: "An Act to quiet titles to lands, located and surveyed by virtue of valid alternate land certificates, originally granted by the State of Texas, to railway companies, and to other corporations engaged in the work of internal improvements."

Sections 1 and 2 of this Act read:

"Section 1. Be it enacted by the Legislature of the State of Texas: That the failure of any railway company or other original grantee of any valid alternate land certificate, to alien-ate their lands or any portions thereof, granted to them, within the periods specified in the laws under which said lands were granted, or by any other law of the State of Texas, shall not be deemed a sufficient cause for forfeiting such lands, or any part thereof, by the State of Texas; provided, it shall appear that such lands have in fact, 'by a bona fide sale been already alienated to actual purchasers; and provided further, that all lands now held by such original grantee shall be sold to actual bona fide purchasers within the period of seven years, otherwise such lands as are not so alienated shall revert to and become the property of the State of Texas;' provided further, that all lands affected by this Act, shall be alienated in tracts not to exceed four sections to any one person or persons, and that no person, persons, or corporations shall make more than one purchase of said lands.

"Sec. 2. That any railway company which has in any manner whatsoever acquired title to or interest in any land in this State, not required in the construction, operation or repair of its railway, or for yards, stations or other facilities, shall alienate the same in good faith within seven years after the passage of this act, otherwise the same shall be forfeited to the State at the suit of the Attorney General."

Since the title to the land at issue was once owned by the T. & N. O. R. R. Co., it is proper to give some of its legislative history.

In 1859 the Legislature passed an Act entitled, "An Act amendatory of and supplemental to an Act entitled an act to incorporate the Sabine and Galveston Bay Railroad and Lumber Company, passed September 1st, 1856." Sp.L. 8th Leg., 1859, ch. 10, p. 9; 5 Gammel 49–51. This Act changed the name of said company to the Texas and New Orleans Railroad Company, and this company by instrument filed Feb-

ruary 21, 1900 with the Secretary of State accepted and was bound by the provisions of our present Constitution, Vernon's Ann.St. (See Sec. 8, Art. 10, providing for the necessity of such acceptance) applicable to or bearing upon the present controversy.

By the Act of 11th Leg., 1866, ch. 174, p. 212; 5 Gammel 1130, railroad companies were given 21 years additional time in which to alienate lands acquired by virtue of land certificates.

■ The State contends that by having had Sec. 7, Block 1 located, surveyed and the field notes thereof filed in the General Land Office, although no patent was issued therefor, that the T. & N. O. R. R. Company thereby "acquired" an interest in and imperfect title to said survey and having failed to alienate the tract within seven years from the effective date of the 1903 Act, the right of the State to forfeit the the title to the survey became fixed and this suit brought by the State in 1958 against the T. & N. O. R. R. Company and its successors in interest to perfect the forfeiture and remove cloud from its title cast by the chain of conveyances into appellee is unassailable. Appellee in answer asserts that since the State failed to issue patent to the survey and is therefore in default of its duty, it cannot assert breach of duty to alienate by the railroad. However, the failure of the Land Commissioner to do his duty to issue the patent, as we view the question alone under the 1854 Act, may not be asserted to defeat this action. Weatherly v. Jackson, 123 Tex. 213, 71 S.W.2d 259. A patent was not a prerequisite to the power of the T. & N. O. R. R. Company to convey its property right in Sec. 7, Block 1, and the certificate therefor under this Act. After the location and survey of the section under its floated certificate the land was severed from the public domain and the title thereto, though imperfect became vested in T. & N. O. R. R. Company as a chattel real. Wantland v. Cowden, Tex. Civ.App., 87 S.W.2d 529. (Error dism.) This is such an interest in land as may be alienated. Thomson v. Langdon, 87 Tex. 254, 28 S.W. 931; Wantland v. Cowden, supra; Stubblefield v. Hanson, Tex.Civ. App., 94 S.W. 406, 407, 410. See, also, Rudder v. Ponder, 156 Tex. 185, 293 S.W.2d 736. It is sufficient title to support a judgment in Trespass to Try Title, Art. 7375, R.C.S.1925. The T. & N. O. R. R. Company in having said floated certificate located, the land surveyed and the field notes thereof filed in the General Land Office thereby "acquired" this land within the meaning of Sec. 9 of the Act of 1854. Alford Bros. & Whiteside v. Williams, 41 Tex.Civ.App. 436, 91 S.W. 636, 639.

The section having been "acquired" in 1878 by the railroad company, appellant therefore concludes that since the company did not alienate it until 1916, some six years after the Act of 1903 required it to be, as appellant construes this Act, the title should revert under the forfeiture clause of this Act "to the State at the suit of the Attorney General." In answer to this, appellee says: first, the Act of 1903, or at least Sec. 2 thereof, is invalid for the reason that while the Act contains two subjects (a) Sec. 1 which quiets title, (b) Sec. 2 which forfeits title, the title of the Act contains only subject (a) and therefore violates Sec. 35, Art. III of our State Constitution.

■ Let us refer back to our earlier statement of the Act of 1903 as passed by the Legislature entitled, "An Act to quiet titles to lands, etc., originally granted by the State of Texas, to railway companies, etc." While Sec. 1 of the Act does have the overall effect of quieting titles, Sec. 2 has the very opposite effect; it is the antithesis of Sec. 1 and of the title of the Act. It provides that titles shall be forfeited to the State at the suit of the Attorney General. This language does not indicate an ipso facto forfeiture but forfeiture shall take place upon action instituted by the Attorney General. Galveston, H. & S. A. Ry. Co. v. State, 81 Tex. 572, 595, 17 S.W. 67, 71. To illustrate the fact that this section

does not quiet titles, from the time such an action could have been instituted in 1910 no proceeding was brought until almost a half century later. We hold Sec. 2 of this Act invalid since the subject matter thereof is not stated in the title as required by Sec. 35, Article 3, of our Constitution. Gulf Production Co. v. Garrett, 119 Tex. 72, 24 S.W.2d 389; Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799 (syl. 6, 7). While Sections 1 and 2 of this Act were included in the Revised Statutes of 1911 as Articles 5394 and 5395, respectively, thus obviating the requirement that Sec. 35, of Article 3, of the Constitution be complied with, as provided in Sec. 43, Article 3, and as construed in American Indemnity Co. v. City of Austin, 112 Tex. 239, 246 S.W. 1019, the fact that as enacted in the 1911 Code, Sec. 2 as Article 5395 required that lands be alienated by railroad companies by July 1st, 1910 makes this article act upon past events and therefore retroactive. This Article upon its face is void as it violates Sec. 16, Art. 1, of the Constitution protecting vested rights, and the interest of T. & N. O. R. R. Company in said section or Survey 7, Block 1, was a vested interest at the time of enactment of R.S.1911. Sherwood v. Fleming, 25 Tex.Supp. 408; McCain v. Yost, 155 Tex. 174, 284 S.W.2d 898; Turbeville v. Gowdy, Tex.Civ.App., 272 S.W. 559.

Appellee also asserts that Sec. 1 of the Act of 1903, being Art. 5394, should be construed so that no requirement should be made to alienate land until after patent shall have first been issued thereto.

To pass upon this question it is proper to examine Acts in pari materia. 39 Tex.Jur. 254. With this in mind, the following are pertinent: Sec. 3, Art. 14 of our present Constitution provides that upon failure of any railroad company to alienate its lands at a period to be fixed by the Legislature, and "in no event to exceed twelve years from the issuance of the patent," such lands shall be forfeited to the State. Under this constitutional provision the Legislature passed an Act to encourage

construction of railroads in Texas by donation of lands. (G.L. 15 Leg.1876, ch. 101, p. 153); 8 Gammel 989. This Act provides that all lands acquired by railroad companies thereunder should be alienated by said companies, one-half in six years and one-half in twelve years "from the issuance of patents to the same," and that all lands so acquired by railroad companies, and not alienated as therein required should be forfeited to the State. This provision is found in the R.C.S. of 1879 under Title 84, Railroads, ch. 12, Lands of Railroad Corporations, as Article 4277, which reads as follows:

"Art. 4277. All lands acquired by railroad companies, under the provisions of this chapter or any general laws, shall be alienated by said companies, one-half in six years and one-half in twelve years from the issuance of patents to the same, and all lands so acquired by railroad companies, and not alienated as herein required, shall be forfeited to the state and become a part of public domain and liable to location and survey as other unappropriated lands."

The sole change in wording as inserted in the 1879 Code over the original 1876 Act is the addition of the underlined portion of the following: "All lands acquired by railroad companies, under the provisions of this chapter *or any general laws*, shall be alienated, etc. * * *." The effect of Art. 4277, therefore, modified and made clearly definite the time for alienation of lands owned by railroad companies (including the land here involved) which the 1854 Act left in doubt. Art. 4277 was combined with Art. 4213 of the 1879 Code and became Art. 4480 of the Code of 1895 with the same provisions of alienation. Art. 4480 became Art. 6539 of the 1911 Code and became Art. 6342 of the 1925 Revised Code without change. In each of these codes it was provided that a railroad company shall alienate its land not needed for railroad operations within a period not to exceed 12 years

"from the issuance of patents to the same" otherwise said lands shall be forfeited to the State. Chief Justice Gaines said in Taylor v. Hall, 71 Tex. 213, 9 S.W. 141, 143, "It is a rule in the interpretation of statutes that all acts relating to the same subject-matter may be considered." And in Houston & T. C. R. Co. v. State, 95 Tex. 507, at page 516, 68 S.W. 777, at page 778, he stated it was the declared policy of our legislature to have uniformity of legislation as respects railroad companies.

■ It is at once apparent that the legislature in enacting the above articles of these codes was carrying out this declared policy of uniformity of the laws with respect to railroad companies bearing upon the issues of the present case. These codes adopted the language in Sec. 3, Art. 14, of the Constitution, which provides that said lands shall be alienated within a period of time not "to exceed twelve years from the issuance of the patent." Bearing in mind the declared policy of the State for uniformity in connection with the requirement of alienation of lands by railway companies as pictured above and also bearing in mind laws providing for forfeiture of rights should be strictly construed against the forfeiture, (Oklahoma Tool & Supply Co. v. Daniels, Tex.Com.App., 290 S.W. 727), it is our conclusion that the word "granted" and the words "original grantee" as used in said section contemplated that patents shall have been actually issued and title "granted" thereunder and the time in which to alienate would therefore begin. A Patent in the instant case never having issued, although under the Act of 1854 and subsequent amendatory acts it was the duty of the Land Commissioner to do so, we hold that the State's suit is without foundation.

■ The State's action cannot be sustained for an additional reason. The laws of the State from the earliest times have restricted ownership by railroad corporations, and other corporations, to lands necessarily required to carry out their charter provisions, and the provisions for aliena-

tion in all of the acts and codes have been with the view that the lands of the State given railroad companies for railroad construction should not be kept by them but should be sold to and owned by actual settlers. The overall object of these laws was to avoid a condition in the nature of mortmain as to the vast areas of the State. See Perpetuities, Title 21, Chap. 18, R.S.1895, Vernon's Ann.Civ.St. art. 1360 et seq. Even if the Act of 1903 is valid in all its parts and we have not placed the correct construction upon it, still, since all interest in Sec. 7, Block 1, was conveyed for a valuable consideration by the T. & N. O. R. R. Company to an individual long before any action was instituted by the State to forfeit title thereto, the object of the law as portrayed in the acts above mentioned has been accomplished. It is our duty to construe these laws so as to alleviate against the rigors of forfeiture, for the law abhors a forfeiture. Board of Insurance Commissioners of Texas v. Great Southern Life Ins. Co., 150 Tex. 258, 239 S.W.2d 803, 809; Freels v. Walker, 120 Tex. 291, 26 S.W.2d 627; Oklahoma Tool & Supply Co. v. Daniels, Tex.Com.App., 290 S.W. 727. And in Gulf Production Co. v. State, Tex. Civ.App., 231 S.W. 124, at page 131, it is said: "Forfeitures by statute or contract are not favored. They must be viewed with a cold and literal scrutiny, that the injury wrought may be held to the minimum." The fact that the sale of the land was made by quitclaim deed, instead of by warranty has no significance, except to further show the unstabilizing effect of Sec. 2 of the 1903 Act, as the purchaser would be charged with the record in the General Land Office in any event. It is our view that the conveyance of the land, as was done, effects the purpose of the statute. Wortham v. Walker, 133 Tex. 255, 128 S.W.2d 1138(12). If the right to bring action by the State to forfeit the title to the land existed after July 1, 1910, it was lost when it was sold by the Railroad Company to W. A. Barnes in 1916. While no case from any court of this state has been found upon the point, decisions of

other states under facts similar to ours uphold this conclusion. State ex rel. Short v. Benevolent Investment & Relief Ass'n, 107 Okl. 228, 232 P. 35, 37 A.L.R. 190; Dutton v. Donahue, 44 Wyo. 52, 8 P.2d 90, 79 A.L.R. 1355. The following texts also support this view. 19 C.J.S. Corporations § 1113, p. 688, § 1115, p. 689; Vol. 1 Hildebrand, Texas Corporations, Sec. 146, p. 376. We quote briefly from State ex rel. Short v. Benevolent Investment & Relief Ass'n, supra. This was an action by the State of Oklahoma to escheat certain lands of the corporation held in violation of the state constitution. It was there said [107 Okl. 228, 232 P. 40]:

"* * * The state now seeks the escheat of all this property. Whether the doctrine of estoppel may be invoked against the state, under such circumstances, it is not necessary here to decide; but we mention these conditions (oil development, etc.) as tending to show that it is hardly conceivable that in such a case, where a corporation takes property, even though in violation of law, it will be deemed to hold title for such a period of time and under such conditions to await the pleasure of the state in beginning an action of escheat. The object of the statute is to prevent the holding by the corporation. The transfer by the corporation has effected the object of the statute. To remedy the mischief the state may at any time begin its action to escheat the land before its transfer or to forfeit the charter.

"It is our conclusion that where, in such a case, the corporation, prior to the beginning of an action by the state, transfers such land in good faith and for value, the purchaser takes title thereby. * * *." (Parenthetical comment supplied.)

From what we have said we believe the trial court's judgment should be and is affirmed.