## SMITH *v.* SHEELEY.

1. Where a party having an inchoate title to land gave a power to "sell and convey" it, declaring, however, in the power, subsequently, that the attorney was authorized "to sell and convey such interest as I have and such title as I may have, and no other or better title," and that he would not hold himself "personally liable or responsible" for the acts of his attorney in conveying the land, "beyond quit-claiming whatever title I have," and the party afterwards acquired complete title, and the attorney conveyed by quit-claim for full consideration, which consideration passed to the principal, *Held,* that the grantor could not, six years afterwards, disavow the act of his attorney and convey the land to another person.

2. Although under the act of Congress of July 1st, 1868, a bank created by a Territorial legislature cannot legally exercise its powers until the charter creating it is approved by Congress, yet a conveyance of land to it, if the charter authorize it to hold land, cannot be treated as a nullity by the grantor who has received the consideration for the grant, there being no judgment of ouster against the corporation at the instance of the government.

ERROR to the Circuit Court for the District of Nebraska; the case being thus :

In February, 1857, Mitchell being an *occupant* of part of a lot in the now city of Omaha—a site which at that time was still part of the public lands—gave to Redick a power of attorney to "sell and convey" it. The instrument, after this grant of power, went on :

"And the said Redick is hereby authorized and empowered to sell and convey such interest as I have in the said lots of land, and such title as I may have to the same, and no other or better title. And it is hereby understood, and these presents ·

are upon this express consideration, that I shall not hold my-self personally liable or responsible for the acts of my said attorney in conveying any of the aforesaid lots beyond quit-claiming whatever titles I have in said premises, without re-course on me, and to that extent and that only."

In the following March the mayor of Omaha, being empowered by the Territorial legislature of the Territory, and availing himself of the powers given to him under what is known as the Town Site Act of Congress, of May 23d, 1844, "for the relief of the citizens of towns upon lands of the United States," paid a certain sum into the Treasury of the United States and got a grant by patent of 138 acres of the public land, where the town of Omaha now stands, "in trust for the several use and benefit of the occupants of land in the city of Omaha, according to their respective interests." The lot which Mitchell had authorized Redick to convey was embraced in this grant; and in April, 1857, the mayor, reciting the patent to him in trust, as already stated, for the occupants of lands in Omaha, conveyed the lot to Mitchell.

Redick, now, May, 1857, under his old power of attorney, made before the issue of the patent to the mayor, or the deed of the mayor to Mitchell, made a deed of "quit-claim" of the lot in consideration of $1175, which he received, to the "Nehama Valley Bank." This "bank" was one which the Territorial legislature of Nebraska, in February, 1857, had passed an act to incorporate. The terms of the charter gave it "power to issue bills, deal in exchange, and to buy and possess property of every kind." Congress, however, as long ago as 1836, had passed an act* providing—

"That no act of the Territorial legislature of any of the Territories of the United States, incorporating any bank or any institution with banking powers or privileges, hereafter to be passed, shall have *any force or effect whatever, until approved and confirmed by Congress.*"

The act of the Nebraska legislature never was approved or confirmed by Congress.

---

* Act of July 1st, 1836, 5 Stat. at Large, 61.

In this condition of things Mitchell, in May, 1863, in consideration of $1, as appeared by the instrument, made a deed of quit-claim of the same lot to one Smith, the lot being then worth $2000, and under that title Smith brought ejectment in the court below. Judgment being given against him, he brought the case here on error.

*Mr. J. M. Woolworth, for the plaintiff in error :*

1. The authority to Redick limited, in express terms, his power to convey such title as Mitchell at the time of making the power had. Mitchell at that time had no title to the lot. He occupied it only. This uncertain and shadowy right he authorized Redick to convey, and no other.

2. The charter of the so-called " Nehama Valley Bank" had not " *any* force or effect whatever." It was therefore void. There was thus no grantee. The deed conveyed nothing, and Mitchell still remained owner. Being owner, his title passed to Smith, who ought to have had judgment.

*Messrs. J. I. Redick and C. Briggs, contra :*

1. The power is " to sell and convey." The subsequent language was not to confine the power to the then title, but to limit the grantor's responsibility.

2. In *Orchard* v. *Hughes*,* this same act of Congress, of 1836, was set up to avoid paying a debt. The defence was not sustained. The effort here is of as bad a kind.

Mr. Justice DAVIS delivered the opinion of the court.

It is insisted, in behalf of the plaintiff in error, that Redick had no authority to make this deed in Mitchell's name, because the power under which he acted directed him to convey such title as Mitchell then had, which was only a possessory right. It is true that in February, 1857, when the power of attorney was given, Mitchell had not the legal title to the lot, but as the mayor of Omaha conveyed it to

---

* 1 Wallace, 73.

him a short time afterwards, it is a fair presumption that he was, at the date of the execution of the power, one of the class of persons who were entitled to a deed from the mayor under the provisions of the Town Site Act of 1844. If so, he was to all practical purposes the real owner of the property, and intended that Redick should sell and convey something more than a " mere uncertain and shadowy right," as the plaintiff in error claims.

But, in the state of the proof it is not necessary to look into the power of attorney to see the extent of the authority conferred, because the subsequent conduct of Mitchell renders it an unimportant subject of inquiry. It would be grossly unjust for Mitchell, having acquired the legal title, to let Redick, under a power of attorney executed before the title was obtained, make a deed in his name to the bank, appropriate to himself the money received for the sale of the property, and then, six years afterwards, disavow the act of his attorney on the plea that he had exceeded his authority. The law will not permit this to be done, and estops Mitchell from setting up such a claim.

It is insisted, however, as an additional ground of objection to this deed, that the bank was not a competent grantee to receive title. It is not denied that the bank was duly organized in pursuance of the provisions of an act of the legislature of the Territory of Nebraska, but, it is said it had no right to transact business until the charter creating it was approved by Congress. This is so, and it could not legally exercise its powers until this approval was obtained, but this defect in its constitution cannot be taken advantage of collaterally. No proposition is more thoroughly settled than this, and it is unnecessary to refer to authorities to support it. Conceding the bank to be guilty of usurpation, it was still a body corporate *de facto,* exercising at least one of the franchises which the legislature attempted to confer upon it, and in such a case the party who makes a sale of real estate to it, is not in a position to question its capacity to take the title, after it has paid the consideration for the purchase.

If, prior to the execution of the deed, there had been a judgment of ouster against the corporation at the instance of the government, the aspect of the case would be different.

There is no error in the record, and the judgment is

AFFIRMED.