**AMERICAN SURETY CO. et al. v. MARSH.**

No. 19449.  Opinion Filed July 1, 1930.

Rehearing Denied Dec. 23, 1930.

Tomerlin & Chandler, for plaintiff in error American Surety Company of New York.

James B. Diggs, William C. Liedtke, Russell G. Lowe, Redmond S. Cole, and C. L. Billings, for plaintiff in error Gypsy Oil Company.

J. B. Moore, Rainey, Flynn, Green & Anderson, Calvin Jones, and Lydick, McPherren. & Jordan, for defendant in error.

REID, C. On the 25th day of November, 1919, James Moyer gave to the Gypsy Oil Company an oil and gas lease on 80 acres of land owned by him and situated in Carter county, for a term ending December 15, 1922, and as long thereafter as oil and gas or either of them should be produced from the land by the lessee or its successors. On November 10, 1922, William Moyer, then the owner of the land, gave to Stanley Marsh a lease on the land for five years to begin on January 2, 1923, and continue as long after the term as production was had on the premises. On February 28, 1923, Marsh brought a suit against the Gypsy Oil Company claiming under his lease, seeking the cancellation of the Gypsy Company's lease, and an order placing him in the possession of the leased premises, quieting his title thereto, and enjoining the oil company from asserting any rights or interest in the premises adverse to his claim. The Gypsy Company had attempted to hold over after the expiration of its lease on the ground that production from the premises by it had operated to continue the lease in effect, which was the issue tried in the case.

The trial resulted in favor of Marsh, giving him the relief he sought, and the Gypsy Company appealed from that judgment and in doing so made a supersedeas bond in the sum of $50,000, with the American Surety Company as its surety, containing the promissory condition in the following language:

"Now, therefore, if the principal obligor shall abide by said judgment, if the same shall be affirmed, and shall not commit or suffer to be committed any waste upon the above-described land, and if, in the event said judgment shall be affirmed, the principal obligor shall pay to the obligee the value of the use and occupancy of said premises from the date hereof until the delivery of the possession thereof to the obligee, pursuant to the judgment, and all costs, and all other damages the obligee may be legally liable for, then this obligation to be void, otherwise, to be and remain in full force and effect."

The issues involved in that case may be more fully understood by an examination of the opinion which will be found in Gypsy Oil Co. v. Marsh, 121 Okla. 135, 248 Pac. 329.

When the mandate had been returned to the trial court upon affirmance of that case by this court, the defendant, Gypsy Company, turned the litigated premises over to Marsh. Marsh thereafter brought this suit upon the supersedeas bond and alleged in his petition and claimed on the trial of the case that he had been damaged by the oil company in the sum of $50,000 by reason of the facts that he was entitled to the immediate possession of the premises under the terms of his lease and by virtue of the decree made and entered on the trial of said cause on June 7, 1923, establishing the validity of his lease; that shortly after the decree was entered he was willing and had an opportunity to sell said lease to certain named parties who were ready and willing to pay therefor $60,000, conditioned on his delivering the possession of the premises, but by reason of the wrongful conduct of defendant in holding and trespassing on the property, and in executing the supersedeas bond, and continuing to exclude plaintiff from possession, he was prevented from selling and assigning the lease. Then when he was able to get possession under the mandate of this court the lease had depreciated to the value of not more than $2,000, and he asked damages in the amount of the bond. The answer of the defendant will be stated in discussing the questions presented by the appeal, as the same defenses were raised by the answer as are done in the appeal.

On the trial to a jury there was a verdict and judgment for plaintiff for $24,000, hence this appeal.

The defendant contends that in the first place it was entitled to supersede the judgment by giving the bond provided for by that part of subsection 3, section 794, C. O. S. 1921, reading as follows:

"When it (the judgment) directs the sale or delivery of possession of real property, the undertaking shall be in such sum as may be prescribed by the court or the judge thereof, to the effect that during the possession of such property by the plaintiff in error, he will not commit, or suffer to be committed, any waste thereon, and if the judgment be affirmed, he will pay the value of the use and occupation of the property, from the date of the undertaking until the delivery of the possession, pursuant to the judgment, and all costs"

—and that, relying on such right, it presented to the trial judge a bond complying with said section, but that the judge arbitrarily required it to insert in the bond the words: **"and all other damages the obligee may be legally liable for"**; that the additional covenant required to be inserted was without authority of law, because more onerous than is required by the statute, and is therefore void as to such condition.

The judgment in the former case found the lease of Marsh to be the valid one and canceled the lease under which the Gypsy Company claimed, and enjoined it from as-

serting any interest in the leased premises adversely to that of the plaintiff; commanded that Marsh "be immediately let into possession of said premises under and by virtue of said (Marsh's) oil and gas lease," and directed the issuance and execution of a writ of assistance therefor, and further provided that the refusal of the defendant, Gypsy Company, to deliver possession on presentation of the writ should constitute contempt of the court.

That it was not a judgment for the recovery of real property has been determined in the opinion of this court in the very case in which this bond was given (121 Okla. 135, 248 Pac. 329). The court there said:

"The oil company contends that Marsh cannot maintain this action because his oil and gas lease is not a grant of the oil and gas that is in the ground, but of such part thereof only as the lessee may find, and passes no estate that can be the subject of ejectment or other real action, and in support of this contention cites Kolachny v. Galbreath et al., 26 Okla. 772, 110 Pac. 902; Warner v. Page, 59 Okla. 259, 159 Pac. 264; Brennan et al. v. Hunter, 68 Okla. 112, 172 Pac. 49; Hill Oil & Gas Co. v. White et al., 53 Okla. 748, 157 Pac. 710; and Frank Oil Co. v. Belleview Gas & Oil Co., 29 Okla. 719, 119 Pac. 260.

"If this were an action in ejectment, or other real action, the position taken would be correct, and the doctrine announced in the cases cited would apply, but this is not such an action, but is a suit in equity brought to determine the rights of the parties under their respective leases, and that a court of equity has jurisdiction to settle the validity and priority of oil and gas leases between contesting lessees, where such leases have been executed by a common landowner, is well settled. Thornton on Oil & Gas, vol. 2, sec. 921; Archer's Law & Practice in Oil & Gas Cases, 895; Trees v. Eclipse Oil Co., 47 W. Va. 107, 34 S. E. 933; Smith v. Root et al., 66 W. Va. 633; Monarch Gas Co. v. Roy (W. Va.) 59 S. E. 789; Guffey et al. v. Smith, 237 U. S. 101, 59 L. Ed. 856; Kentucky Coke Co. v. Keystone Gas Co., 296 Fed. 320; Logan Natural Gas & Fuel Co. v. Great Southern Gas & Oil Co., 126 Fed. 623, 61 C. C. A. 359; Downey v. Gooch, 240 Fed. 527; Allegheny Oil Co. v. Synder et al., 106 Fed. 764; Smith v. McCollough et al., 285 Fed. 698. And, having jurisdiction, the court may grant such relief to either party as the pleadings and proof warrant."

The main issue in the case was the validity of the lease held by the Gypsy Company, for if that lease was valid under its claim of production from the leased premises after December 15, 1922, then it would have followed that plaintiff's lease was invalid, at least, was inoperative. Upon the cancellation of defendant's lease and the adjudication that plaintiff's lease was valid, the defendant became as a trespasser from January 2, 1923, against plaintiff's right to develop the property. Defendant's claim was thereby completely denied as of that date; and the further judgment for possession followed as an incident. The statute in question does not apply to the situation presented in that judgment, and we seem to have none that does.

In an unbroken line of decisions this court has held that:

"In cases where the statute makes no provision for a supersedeas, or a stay of the judgment or final order, as a matter of right, the trial court may in the exercise of its discretion allow a supersedeas or stay on such terms as it may prescribe for the protection of the parties pending an appeal to the appellate court." In re Epley, 10 Okla. 631, 64 Pac. 18.

Also, Palmer v. Harris, 23 Okla. 500, 101 Pac. 852; New Amsterdam Casualty Co. v. Scott, 106 Okla. 268, 234 Pac. 181; National Surety Company v. Craig, 94 Okla. 63, 220 Pac. 943.

If the plaintiff is entitled to recover the damage sued for in this case, it would seem to follow that the trial court in the former case properly required the defendant to make a bond conditioned that it would pay such damage in the event the appeal failed. This condition of the bond in no way enlarged the defendant's liability, but only guaranteed payment if liability accrued.

We have thus come to the question interwoven with the foregoing one, and the main one in the case; that is, whether defendant is liable to plaintiff for the character of damages for which plaintiff has recovered by this judgment.

The judgment in the first case was entered on June 23, 1923. The plaintiff introduced evidence in the present case to the effect that on June 30, 1923, he had an offer of purchase of his lease for the sum of $60,000, conditioned upon his being able to deliver possession of the leased premises. The good faith of this offer is attacked by the defendant, but there is evidence tending to show that it was made in good faith and that the proposed purchasers were able to pay. On July 7, 1923, the supersedeas bond herein sued on was filed, whereby the defendant remained in possession of the premises pending the determination of its appeal from the judgment against it, and Marsh's sale was never made. There is evidence sufficient to sustain the jury in the finding that, on account of the failure of production on adjoining lands where tested, pending the

appeal and delivery of possession to Marsh, the lease had depreciated to an amount equal to the verdict returned in this case.

It is the contention of the defendant that the right of Marsh in the oil and gas lease he held was too speculative to be the basis of a recovery for the damages for which the judgment was rendered. And the defendant relies upon the case of Martel v. Hall Oil Company, 253 Pac. 862, decided by the Supreme Court of Wyoming on March 8, 1927, to sustain its position, and it does.

In the final analysis of the facts in that case, the plaintiff, Martel, was the owner of what amounted to an oil and gas lease on a certain tract of land, which lease then had a market or selling value of many thousand dollars. The Hall Oil Company claimed under another lease from the landowner, and notwithstanding notice by Martel and the landowner not to do so, it attempted to develop the property and a dry hole resulted. The lease under which the oil company claimed was held invalid in a suit by the landowner (Hall Oil Co. v. Barquin [Wyo.] 237 Pac. 255), and Martel brought suit against the oil company for the destruction of the value of his leasehold. The court held, in substance, that Martel's rights under the lease were purely speculative and that the drilling done by the oil company only established the fact that Martel had nothing of value by his lease; and that he was therefore entitled to recover nothing but nominal damages for the destruction of a right or trespass on his right, where no real value was destroyed. In other words, the court held that the value of an oil and gas lease depends upon the ultimate fact that the leased land has oil or gas in paying quantities under it, and that a trespasser can perform any act establishing the fact that such lands will not produce, and that the leaseholder under the circumstances can recover only nominal damages, though he might have been able, but for the act of the trespasses, to have sold his lease for a million dollars.

But in order that it may best be seen whether we should follow the holding of that case, we have concluded to set out that part of the opinion most applicable to the facts in the present case, and which evidently contains the basic reasons the court had for there denying plaintiff's recovery. The court, at page 866, said:

"Incident, however, to the direct right which plaintiffs had, as above mentioned, they also had the right to lease or sell their interest in the land, and their main claim for damages is, as already stated, based upon the theory that defendants destroyed the sale value of their interest by drilling on the land, and proving that the land contained no oil or gas. In other words, plaintiffs contend that defendants, by their acts, made the quality of the land, as to oil and gas, known to the public, thereby destroying the sale value as aforesaid. They complain, in short, that the defendants, by their trespass, made the truth known, and that defendants thereby deprived the plaintiffs of the chance or opportunity to make a good bargain by selling or otherwise disposing of their interest. Now we should not lose sight of the nature, meaning, and significance of that chance or opportunity, which is claimed to have been destroyed. It may be, though there is no showing to that effect, that the plaintiffs might have sold their rights for a considerable sum of money. They would then have been the gainers, and the purchaser would have been the loser. They would, upon their own theory, have pocketed a lot of money, but for what? What would they have given in return? Nothing. They would have sold something of no value whatever. They would, upon their own theory, have received something for nothing in return. This is the sort of opportunity which we are asked to protect, and that, too, in the absence of a contract, or a bona fide offer of purchase from any one, showing a voluntary desire and consent to make such payment, * * * and which only could furnish the plaintiffs with a moral basis for taking or exacting a sum or money for which nothing of value would, in fact, be given in return. That a wealthy corporation might have been the purchaser furnishes no answer; it might have been a poor widow instead."

It will be observed from the foregoing that the plaintiff there had not shown he had a purchaser able and willing to buy his lease (an element in the present case). But there is a strong intimation that this fact would not have added anything to the plaintiff's case, for, to recognize such right would in fact encourage fraud by protecting him in his right to sell something which in fact he never had.

The plaintiff, Marsh, contends that the decision of the Supreme Court of Texas, speaking through a division of its commission, in the case of Humble Oil & Refining Company v. Kishi, 276 S. W. 190, had decided the question the other way, in his favor. We find this to be true. The opinion in the Martel Case recognizes this, but refused to follow the Texas court. But we have concluded that the latter case is fortified by better reasoning; and we think this is so clearly shown by the opinion, we quote from it at length as follows:

"K. Kishi, the owner of all the surface and three-fourths undivided interest in the oil and mineral rights, and Isaac Lang, the owner of the remaining one-fourth interest

in the oil and mineral rights of 50 acres of land in Orange county, Tex., executed to the Humble Oil & Refining Company a lease granting to it the exclusive right to enter upon said land and drill oil wells and take therefrom the oil. This lease was of date December 23, 1919, but was not signed and acknowledged by Lang until January 29, 1920, and was thereafter delivered to said Humble Oil & Refining Company. By its provisions it was to remain in force for no longer period of time than three years from its date, unless within said three years drilling for oil was commenced. No drilling was begun within the time provided, and the lease expired. After the expiration of this lease, in January, 1923, oil was found on an adjoining tract of land in a well drilled near this 50 acres. On January 23, 1923, the Humble Oil & Refining Company entered upon this 50 acres of land, and began drilling an oil well thereon, claiming the exclusive right to the leasehold interest therein. It claimed that the lease had not expired, and that under its terms it did not expire until three years after it was signed and acknowledged by Lang and delivered. Kishi protested against this entry, and advised the Humble Oil & Refining Company that he would hold it responsible for any damages that might accrue to him. Lang, however, consented to the entry under the claim made.

"The Humble Oil & Refining Company remained in possession under this entry until it completed the drilling of the well, which resulted in the failure to find oil, and it relinquished possession on May 10, 1923. As a result of the discovery of oil on the adjoining tract of land, the leasehold interest in the 50-acre tract was of the market value of $1,000 per acre. At the time the Humble Oil & Refining Company relinquished possession, and thereafter, the leasehold interest had no value by reason of the failure to find oil on this tract.

"In suit by Kishi against the Humble Oil & Refining Company for damages sustained by him, the district court awarded him nominal damages in the sum of $1 only, holding that the amount of damages sustained by him was uncertain and not susceptible of proof. On appeal from this judgment the Court of Civil Appeals held that he was, under the facts, entitled to recover the actual damages occasioned by reason of the wrongful entry and ouster, which was the value to him of his three-fourths undivided leasehold interest, but that proof of the market value of the entire leasehold interest was not in law sufficient upon which to base the amount of his recovery.

"Oil in place under the land is real estate. The exclusive right to enter upon the land, drill wells thereon, and remove therefrom the oil to exhaustion, paying therefor a portion of the oil when extracted or the equivalent of such portion, is a prop-erty right which the law protects. The Humble Oil & Refining Company, wrongfully claiming to own this right over the protest of Kishi, and excluding him therefrom, entered upon his 50 acres of land for the purpose of drilling the well. This was clearly a trespass and ouster. This right had a market value of $50,000, being $1,000 per acre. Had Lang not consented and had he and Kishi joined in a suit to recover their damages for the wrongful entry, the measure of their damages would have been the market value of the leasehold interest, which is here shown to be $1,000 per acre. Lang would have been entitled to one-fourth and Kishi to three-fourths of the amount recovered. We can conceive of no reason why Kishi should be permitted to recover either a larger or smaller amount, because it is shown that Lang consented to the entry.

"The Humble Oil & Refining Company insists that it should not be required to pay as damages Kishi's proportionate share of the market value of this leasehold interest, because it entered upon the land in good faith, believing that its lease had not expired. Though it did so in good faith, without any intention to injure Kishi, it asserted a right it did not have. This right, at the time, it was wrongfully asserted, had a market value. Had the oil company acquired this right by purchase before its entry, the presumption of law is that it would have been required to pay the market value therefor. Had it done so, Kishi would have been entitled to receive three-fourths of the market value of the leasehold interest. We think that in this case three-fourths of the market value of the leasehold interest was the measure of the damages which Kishi was in law entitled to recover, and that proof of the market value was in law sufficient upon which to determine the amount of judgment in his favor. Gulf, Colorado & Santa Fe Ry. Co. v. Cusenberry, 86 Tex. 529, 26 S. W. 43."

In the Kishi Case it was the landowner's rights held to have been violated by the oil company. But the principle decided applies as well to the rights of a leaseholder. In the Kishi Case the oil company held the property under the claim that the effective date for fixing the three-year term of the lease was the date when the instrument was actually signed and acknowledged, but the court held that the date on the face of the lease controlled, and that as the company has waited more than three years after that date before commencing a well, its acts constituted in law a trespass for which the owner could recover his damages, though the oil company had acted in good faith. In the present case, Marsh took his lease with an effective date after the term when the Gypsy Company lease would expire without production; and when the lease un-

der its term was about to expire the company concluded to develop and drill a well, and attempted to hold under a claim of production which this court properly held was without merit. It is contended by the defendant that, as its claim was asserted in good faith, it cannot be held to answer though plaintiff was damaged, because this is in the nature of an action for the slander of title to real estate, and that we should follow the rule there applicable, which it says is that no damage can be had unless the party acted with malice. While it is true that in some respects the rights in oil and gas leases have been determined by rules applicable to real estate, but, as heretofore shown, such rules are not applicable to the situation presented by the facts in this case, for that was not a suit primarily involving realty, as held in that case and sustained by previous opinions therein cited. Ordinarily, the question as to whether a party acted with malice relates only to the question as to whether he should answer for punitive damages, and we see no reason why this case calls for an exception to the general rule.

Conceding that the defendant's claim to and possession of the premises was asserted in good faith, as said in the Kishi Case, "it asserted a right it did not have," and its conduct operated as a barrier against the right of the plaintiff to enjoy his full and complete property right in the lease. There is little merit to the contention that his right was merely speculative. His proof was sufficient to show that he had an opportunity to sell, and that for a substantial sum, and could have done so but for the asserted rights and conduct of the defendant, who was successful in holding it until plaintiff's bargain was gone and until adjacent developments had depreciated the value to a minimum. A party must be entitled to recover against another for causing him such a substantial loss. The conduct of the defendant was just as effective to damage plaintiff in his valuable right as if it had held the property by force of arms.

We are not disposed to follow the holding of the Wyoming court and say that a party cannot recover for the value of an oil lease if it afterward develops that the leased premises had no oil under it. It is a matter of such common knowledge as to require us to take judicial notice of the fact that in this jurisdiction oil and gas leases sell every day for thousands of dollars when it is not known by the purchaser whether the leased premises will ever produce an ounce of oil.

The defendant ought to respond for whatever damage its conduct caused plaintiff.

And that brings us to the question as to whether the bond is answerable for such damage.

In the case of Bemiss v. Commonwealth, 75 S. E. 115, the Supreme Court of Virginia said in the syllabus:

"Where bonds directed by a decree to be delivered to a party depreciated in value during the time the operation of the decree was suspended by a supersedeas, the recovery on the supersedeas of the damages from the depreciation cannot be denied, on the ground that by delivery of the bonds after affirmance of the decree the party received all that he was entitled to under the decree."

See City of Clay Center v. Williamson (Kan.) 100 Pac. 59.; Kansas Bitulithic Paving Co. v. United States Fidelity & Guaranty Co. (Kan.) 106 Pac. 45.

However, this question has, in effect, already been answered. We concluded (a) that the statute relating to real estate did not limit or control the court in fixing the conditions of this bond, (b) that it was proper for the court to require the bond here given, and (c) that the character of damage plaintiff sued for is recoverable from the defendant. It would then seem to necessarily follow that, if the evidence is sufficient to sustain the verdict and we find that it is, the judgment on the bond must be sustained unless other alleged errors require a reversal.

The defendant next contends that it was error for the court to permit this case to proceed to judgment after the testimony of Marsh developed that Judge A. T. West from the beginning had owned a one-half interest in the Marsh lease, and that the heirs of Judge West, now deceased, still owned such interest, on the theory that the action was not prosecuted in the name of the parties in interest. Defendant cites the case of Illinois Oil Company v. Block, 129 Okla. 122, 263 Pac. 650. That case is not in point, for the reason that Block's evidence developed the fact that, notwithstanding he had alleged he was doing business under the firm name of Block & Company, two other persons were actually members of the partnership, and upon development of that fact the defendant there moved the court to dismiss the action. In the present case the legal title to the lease stood alone in the name of Marsh, who as plaintiff prosecuted the former case to judgment and affirmance. The bond made on that appeal and here sued on was payable to him alone. The legal title and rights under both instruments stood vested in him. These facts furnish sufficient protection to the defendant to insure that the judgment of

Marsh in this case will preclude recovery by any other person upon any part of the same cause of action, and it not being suggested by defendant that there are outside equities between it and the West heirs that should be adjusted in this suit, we find no error here. Washington v. Morton, 90 Okla. 142, 216 Pac. 457; Okmulgee Producing & Refining Co. v. Brown, 109 Okla. 215, 235 Pac. 546; Illinois Central Railroad Co. v. Hicklin (Ky.) 115 S. W. 752, 23 L. R. A. (N. S.) 870; Bell v. City of Newton (Mass.) 67 N. E. 599; Koch v. Story (Colo.) 107 Pac. 1093.

We have examined the instructions in the case and find them without substantial error. Having concluded that no error has been shown in any other particular and that the evidence supports the verdict and judgment, the cause is affirmed.

BENNETT, TEEHEE, LEACH, and DIFFENDAFFER, Commissioners, concur.

FOSTER, Commissioner, concurs in result.