## McMILLAN et ux. v. PAWNEE PETROLEUM CORP. et al.

No. 21461. Opinion Filed July 21, 1931.

Bierer & Bierer, for plaintiffs in error.

W. N. Stokes, Grant & Grant, Ed. I. Irwin, and McGuire & McGuire, for defendants in error.

McNEILL, J. This suit was filed on the 1st day of May, 1928, in the district court of Logan county, by the plaintiffs in error, as plaintiffs, against defendants in error, as defendants, to have declared illegal and void and canceled of record a certain mineral deed, by which the plaintiffs conveyed the mineral rights in a tract of 160 acres of land in Logan county to the defendant Pawnee Petroleum Corporation, and also to have declared illegal and void and canceled of record a certain deed made by said Pawnee Petroleum Corporation, and its transferees, whereby the defendants Welch, Acton & Brown, Inc., acquired an undivided one-fourth interest, the defendant Tom Slick, Inc., an undivided one-half interest, and the defendant C. O. Blunk an undivided one-fourth interest, in and to said mineral rights. In their petition the plaintiffs tendered and offered to pay the consideration received by them, the sum of $900, to the Pawnee Petro-

leum Corporation, or to any of its grantees whom the court might adjudge and decree were entitled thereto. The defendant Sinclair Oil & Gas Company was the owner of an oil and gas mining lease upon said quarter section of land and the plaintiffs prayed that the rental under said lease should be paid to them. The defendants Pawnee Petroleum Corporation and Welch, Acton & Brown, Inc., made no appearance in said cause. By agreement of parties an order of court was entered by which the defendant Sinclair Oil & Gas Company was directed to pay the rentals due under its lease to the clerk of the court to await the final determination of the cause.

The issues were made up between the plaintiffs and the defendants Tom Slick, Inc., and C. O. Blunk, and the case was tried to the court and judgment was rendered in favor of the defendants, from which judgment the plaintiffs appealed.

The parties hereto will be hereinafter referred to as they appeared in the trial court, William W. McMillan and Lillie McMillan, his wife, plaintiffs in error, as plaintiffs, and Pawnee Petroleum Corporation, Tom Slick, Inc., Welch, Acton & Brown, Inc., C. O. Blunk and Sinclair Oil & Gas Company, a corporation, defendants in error, as defendants.

The trial court made certain findings of fact concerning which there is no controversy, and which are, in substance, as follows:

On October 26, 1926, the plaintiffs in error, being the owners of lots 3 and 4, and south ½ of northwest ¼ of section 2, township 18 north, range 3 west I. M., Logan county, Okla., made a deed to the mineral rights on said premises, which was recorded on the 19th day of February, 1927; that the Pawnee Petroleum Corporation, at the time of taking said deed, was duly chartered under the laws of the state of Delaware, and had power and authority under said charter to take, hold, sell, and deal in lands, and at that time was transacting the business of buying and selling oil and gas leases and mineral interests in lands within the state of Oklahoma, without having complied with the domestication statutes of this state, which provide that a foreign corporation before doing business in this state shall file a certified copy of its charter or articles of incorporation in the office of the Secretary of State, pay the fee required by law, and appoint an agent upon whom service of process can be made in any action in which such corporation is a party, and obtain a license to transact business within the state; that, on the 16th day of February, 1927, the Pawnee Petroleum Corporation made, executed, and delivered to Ralph Covey a mineral deed to an undivided one-half interest in the mineral rights in the above-described tract of land; that, on the 22nd day of February, 1927, the said Ralph Covey made, executed, and delivered to the defendant in error Tom Slick, Inc., a deed to such an undivided one-half interest in the mineral rights in the above-described tract of land; which deeds were duly filed for record and recorded in the office of the county clerk of Logan county, Okla., on the 25th day of February, 1927; that, on the 31st day of March, 1927, the Pawnee Petroleum Corporation made, executed, and delivered to the defendant in error C. O. Blunk a deed, conveying to the said C. O. Blunk an undivided one-fourth interest in and to all the mineral rights in the said above-described tract of land; which said deed was duly filed for record and recorded in the office of the county clerk of Logan county, Okla., on the 1st day of April, 1927; that thereafter, on the 28th day of June, 1927, said corporation complied with such domestication statutes and obtained from the Corporation Commission of the state of Oklahoma a license to do business within the state.

The sole question presented in this case is whether a mineral deed made by a citizen and resident of this state, by which such citizen attempts to convey the mineral rights to land located within this state to a foreign corporation, and the mineral deeds thereafter made by such foreign corporation and its transferees, whereby it is attempted to convey such mineral rights to other persons, before such foreign corporation has complied with the domestication statutes of this state, are void and subject to be canceled of record upon the suit of such citizen, even though such deeds were based upon a valuable consideration fully paid, were recorded in the office of the county clerk, and the subsequent transferees having so purchased such mineral rights from such foreign corporation without actual knowledge that such foreign corporation had not complied with such domestication statutes.

It is the contention of the plaintiffs in error that the mineral deed of the McMillans, the plaintiffs herein, was illegal and void because it was made in violation of the foreign corporation statutes of this state. Also, that the mineral deed to the Pawnee Petroleum Corporation, being void as to the corporation, no rights could be acquired under it by Welch, Acton & Brown, Inc., who

defaulted for pleading below, or Tom Slick, Inc., or C. O. Blunk, who purchased their mineral rights from or through the Pawnee Petroleum Corporation, and that it makes no difference whatever that they purchased the same in good faith and paid a valuable consideration therefor, without knowledge that the Pawnee Petroleum Corporation had not prior to said transaction domesticated and complied with the foreign corporation laws of the state of Oklahoma, or, in brief, that said deed to the Pawnee Petroleum Corporation is absolutely void, and that any person can take advantage of it. On the other hand, it is the contention of the defendants in error Tom Slick, Inc., and C. O. Blunk, that the deed from the plaintiffs in error to the Pawnee Petroleum Corporation was at most voidable, and that the Pawnee Petroleum Corporation, having transferred all of its title to said property by good and sufficient deeds, before any action was brought by the plaintiffs in error to void the contract, good title passed to the grantees of the Pawnee Petroleum Corporation.

It is further contended by the defendants Tom Slick, Inc., and C. O. Blunk, that the plaintiffs, by their deed to the Pawnee Petroleum Corporation, proclaimed to the world that the Pawnee Petroleum Corporation was legally capable of taking title to the property involved, and that they cannot now be heard to deny its capacity to take.

Can the plaintiffs, after having completed a sale of an interest in real estate, in that they made, executed, and delivered the mineral deed in question to the Pawnee Petroleum Corporation, an undomesticated foreign corporation, and received the full consideration therefor, the contract being fully executed, in the absence of fraud, subsequently urge that their executed contract entered into at the time with such undomesticated foreign corporation is void, and that no title passed by reason of the failure of such foreign undomesticated corporation to comply with statutes of this state in reference to the domestication of such corporation? This precise question does not seem to have been passed upon by this court.

If the Pawnee Petroleum Corporation, not having domesticated at the time of receiving the deed in question, could not and did not receive title to the premises in question, which deed under the authorities of this state conveyed an interest in realty (American Surety Co. v. Marks, 146 Okla. 261, 293 Pac. 1041; Nicholson Corporation v. Ferguson, 114 Okla. 16, 243 Pac. 195; Central Coal & Coke Co. v. Carseloway, 45 Fed. [2nd] 744), then the subsequent grantees of said corporation could not acquire any greater interest therein than their immediate grantor, in the absence of a showing that they were not purchasers in good faith for a valuable consideration and without notice of the domestication of said Pawnee Petroleum Corporation.

Plaintiffs lay stress on the proposition that the deed in question is void because the contract was void, and that the Pawnee Petroleum Corporation had no capacity to take the deed in question, and that the deed being void, the subsequent conveyances of the Pawnee Petroleum Corporation conveyed to its grantees no title. In this case it is to be remembered that the Pawnee Petroleum Corporation, at the time of the taking of the deed from the plaintiffs under its charter, granted to it by the state of Delaware, had power and authority to take, hold, sell, and deal in lands, and that the Pawnee Petroleum Corporation, or its grantees, are making no attempt herein to enforce their contract, but are defending their title to the premises in question against the action brought by the plaintiffs more than a year after the deeds from the Pawnee Petroleum Corporation were executed and recorded.

The various statutes of the different states in reference to foreign corporations being treated as aliens unless complying with the requirements of the statutes before being permitted to carry on business within the state, have their foundation upon the common-law principles that an alien may purchase and hold real estate only for the benefit of the king, and that such alien could hold the same subject to the right, at all times before conveyance of same, of the king perfecting his prerogative of "office found." An illuminating discussion of this basic principle is found in the case of American Mortg. Co. of Scotland, Ltd., v. Tennille, decided by the Supreme Court of Georgia, reported in 13 S. E. 158, in which that court held that "the state alone can make the question as to the right of such corporation to hold said land." In the body of the opinion, that court states as follows:

"An act of Nebraska, passed in 1887, provided that no nonresident alien foreigner, nor any corporation not incorporated by laws of that state, should acquire or own, hold or possess, any real estate in the state of Nebraska. While this law was in force, Aultman & Company, a foreign corporation, purchased land in that state at a judicial sale, and it was held that this corporation's title

was valid against every one but the state, and could be divested only by proceedings brought by the state for that purpose. These foreign corporations, it seems, have been treated as aliens were in England as to purchasing and holding real estate. By the common law, while an alien might purchase, he could do so only for the benefit of the king, and the king was entitled to land purchased by him by virtue of his prerogative upon 'office found'; and accordingly it was held that, unless the proceeding of 'office found' was perfected, an alien had the power to hold and convey the land inter vivos. 1 Devl. Deeds, sections 124, 125. It therefore seems clear, in view of the cases cited and the common-law foundation upon which the principle governing them is based, that the doctrine is thoroughly established in our American states that the right of foreign corporations to purchase or hold lands in excess of the authority conferred, either by their own charters or by the laws of the state in which such purchase is made, can only be questioned by the state itself in which such land may be situated."

In the case of Terrace v. Thompson, Attorney General of Washington, 274 Fed. 841, on page 850, the federal court of the Eighth Circuit states:

"State ex rel. Winston v. Morrison, 18 Wash. 664, 52 Pac. 228, was a suit in which the court held a 99-year lease of real estate amounted to 'ownership,' as that word was used in the above-quoted section. In State ex rel. Winston v. Hudson Land Co., 19 Wash. 85, 52 Pac. 574, 40 L. R. A. 430, the holding was the same as to a 49-year lease. In State ex rel. Morrell v. Superior Court, 33 Wash. 542, 74 Pac. 686, it was held that an alien corporation could not acquire real estate in the state of Washington by eminent domain. Abrams v. State of Washington, 45 Wash. 327, 88 Pac. 327, 9 L. R. A. (N. S.) 186, 122 Am. St. Rep. 914, 13 Ann. Cas. 527, hold that the grantor in a deed of real estate to an alien could not recover the real estate; that the state alone could invoke rights on account of the disability of the grantee under the above section, and that, the alien having died before the state sought to escheat the lands, the heirs, although themselves aliens, were entitled to inherit the lands, as well as citizens, under the express exception in the Constitution; and that the state, to succeed, must proceed while the lands were still in possession of the alien wrongfully acquiring them. In State ex rel. Atkinson v. World Real Estate Commercial Co., 46 Wash. 104, 89 Pac. 471, it was held that, as the alien had conveyed the lands prior to the institution of proceedings to escheat, the state had lost such right. Prentice v. How, 84 Wash. 136, 146 Pac. 388, was a decision to the same effect."

In this same connection, the Supreme

Court of the United States, holding that such a corporation is acting as a de facto corporation, in the case of Smith v. Sheeley, 20 L. Ed. 430, 12 Wall. 358, states as follows:

"It is insisted, however, as an additional ground of objection to this deed, that the bank was not a competent grantee to receive title. It is not denied that the bank was duly organized in pursuance of the provisions of an act of the Legislature of the territory of Nebraska, but, it is said, it had no right to transact business until the charter creating it was approved by Congress. This is so, and it could not legally exercise its powers until this approval was obtained, but this defect in its constitution cannot be taken advantage of collaterally. No proposition is more thoroughly settled than this, and it is unnecessary to refer to authorities to support it. Conceding the bank to be guilty of usurpation, it was still a body corporate de facto, exercising at least one of the franchises which the Legislature attempted to confer upon it, and in such a case the party who makes a sale of real estate to it is not in a position to question its capacity to take the title, after it has paid the consideration for the purchase."

The Supreme Court of the state of Utah, in the case of Mansfield v. Neff, 134 Pac. 1160, on page 1166, states:

"It is also squarely held by the Supreme Court of the United States in Smith v. Sheeley, 12 Wall. 358, 20 L. Ed. 430, that, although the grantor may not legally be entitled to hold real estate, he, nevertheless, may be a conduit to pass title, or may obtain the property and pass a good title thereto to one who is legally authorized to acquire and hold it."

We next consider the question of whether a contract made with a foreign corporation, which is doing business within the state, without first having procured authority therefor, is void or merely voidable. Sections 5432, 5435, and 5438, C. O. S. 1921, are as follows:

Section 5432:

"No foreign corporation, except created solely for religious or charitable purposes, shall transact business within this state until it shall have filed in the office of the Secretary of State a certified copy of its charter or articles of incorporation, which shall be recorded in a book to be kept by the Secretary of State for that purpose, and shall have paid the fees required by law."

Section 5435:

"If any such foreign corporation shall fail to comply with the foregoing provisions of this article, all its contracts with citizens of this state, entered into after the approval

of this article, shall be void as to the corporation, and no court of this state shall enforce the same in favor of the corporation."

Section 5438:

"No foreign corporation, as above defined, which shall fail to comply with this article, can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of contract or tort."

In the case of M. S. Cohn Gravel Co. v. Southern Surety Company, 129 Okla. 171, 264 Pac. 206, this court considered the question of a contract entered into by and between a citizen of the state and a foreign corporation doing business in the state without complying with the statutory provisions of this state, and held that such contract was not void, but voidable only. In the body of the opinion, the court states as follows:

"The words 'void' and 'voidable' are frequently used indiscriminately. And frequently where the word 'void' is used in a statute or judicial opinion, it is necessary to resort to the subject-matter or context to determine precisely the meaning intended to import. Capps v. Hensley, 23 Okla. 311, 100 P. 515. Had section 5435 concluded by saying that such contracts 'shall be void,' without adding 'as to the corporation,' there could have been no doubt that the Legislature meant that such contracts would, in legal effect, be nullities, and no rights could grow out of them. This latter expression, 'as to the corporation,' limits and restricts the meaning of the word 'void' so that it has no application in its correct meaning to such contracts in so far as the rights of citizens of the state which may arise thereunder are concerned. The Legislature having specified against whom such contracts should be void, there is no room for the contention that they should be void as to any other party. This presents the exact situation of a voidable contract. A void contract, in the strict legal sense, is a nullity, and no parties thereto can enforce any rights claimed thereunder. The concluding expression, 'and no court of this state shall enforce the same in favor of the corporation,' was also in the old Indian Territorial Act, and was considered by this court in Verdigris River Land Co. v. Stanfield, supra. In view of the primary purpose of these statutes, this expression adds nothing to the former declarations in this section. Section 5438, supra, provides that no foreign corporation which shall fail to comply with this article can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of contract or tort. If the contracts referred to * * * be treated as utterly void, why was this section adopted at the same time in so far as it relates to contracts? That construction would raise the bars against a foreign corporation's entering the courts to enforce a contract made before it had domesticated more effectively than the language of the latter section would justify."

Construction upon statutes similar to ours may be found in the following cases: Kraft v. Hoppe (Minn.) 188 N. W. 162; Henry W. Mahar v. Harrington Park Villa Sites, 204 N. Y. 231; Peter & Burghard Stone Co. v. Carper (Ind. App.) 172 N. E. 319; Ehrhardt v. Robertson Bros., 78 Mo. App. 404; Frittz v. Palmer, 132 U. S. 282; Mutual Benefit Life Ins. Co. v. Winne (Mont.) 49 Pac. 446; David Lupton's Sons Co. v. Automobile Club of America, 225 U. S. 489; Eastlick v. Hayward Lumber & Investment Co., 33 Ariz. 242, 263 Pac. 936.

It is to be observed that section 5435, C. O. S. 1921, supra, does not declare that contracts with citizens of this state shall not be entered into, but states that the same "shall be void as to corporations, and no court of this state shall enforce the same in favor of the corporation." As a penalty therefor, section 5438, supra, provides that such corporation, which fails to comply with this article, cannot maintain any suit or action in any of the courts of this state, whether arising out of contract or tort. After the deed was executed, delivered, and the consideration paid, the same constituted an executed contract. As defined by our statute, section 5064, C. O. S. 1921, "an executed contract is one, the object of which is fully performed, all others are executory." In this case, so far as the deed from the plaintiffs to the Pawnee Petroleum Corporation is concerned, the sale of the land in question was completed, and the deed to the corporation divested the estate of the plaintiffs, the grantors, in and to the same, and whether or not the said corporation in purchasing the said premises exceeded its power is a question between it and the state, and does not concern the vendor or others. American Mtg. Co. of Scotland, Ltd., v. Tennille, 13 S. E. 159, supra. In such case, the title passed as against all persons excepting the state. Thompson on Corporations (3rd Ed.) vol. 8, sec. 6643.

Plaintiffs cite and rely upon the case of Wisconsin Trust Co. v. Mundy (Wis.) 168 N. W. 393. The Wisconsin Trust Company and Frederick Robinson, the plaintiffs, brought suit to cancel, rescind, and set aside two separate deeds given by each to the Realty Realization Company, a foreign corporation, which had not complied with the domestication statutes of that state. The

voidable. An examination of the statutes of Wisconsin reveals that the Wisconsin statute specifically provides that, "No corporation incorporated or organized otherwise than under the laws of this state * * * shall transact business or acquire, hold, or dispose of property in this state until such corporation shall have caused to be filed in the office of the Secretary of State, a copy of its charter," etc., and, also, the following:

"Every contract made by or on behalf of any such foreign corporation, affecting the personal liability thereof or relating to property within this state, before it shall have complied with the provisions of this section, shall be wholly void on its behalf and on behalf of its assigns, but shall be enforceable against it or them."

This decision rests upon a statute prohibiting undomesticated foreign corporations from acquiring, holding, or disposing of property within that state.

Our domestication statutes do not contain any provision that a foreign corporation shall not hold or dispose of property in this state, and do not contain the provisions that the contracts made by such corporations are "wholly void on its behalf and on behalf of its assigns." Our statute states that the same "shall be void as to the corporation." If the corporation fails to comply with the provisions of the statute and seeks enforcement of its rights in the courts of this state against the citizen thereof, such citizen may avail himself of the provisions of the statute. On the other hand, if the citizen seeks to declare an executed contract void as against said corporation and its assigns or grantees, he is confronted with the apparent legality of the corporation doing business in the state which gives it a de facto character, and its existence de jure cannot be collaterally attacked by any other than the state, and only then in a direct proceeding. Kardo v. Adams, 231 Fed. 950.

The Supreme Court of South Dakota, in the case of Wright v. Lee, reported 51 N. W. 706, and on rehearing reported in 55 N. W. 931, discusses the domestication statutes of that state, which contain a part of the identical language of the Wisconsin statute, such part of said South Dakota statute being as follows:

"No corporation created or organized under the laws of any other state or territory shall transact any business within this territory, or acquire, hold, and dispose of property, real, personal, or mixed, within this territory, until such corporation shall have filed in the office of the secretary of the territory a duly-authenticated copy of its charter or articles of incorporation, and shall have complied with the provisions of this article."

In this case, the assignee of a foreign corporation, the Labelle Ranch Horse Importing Company, brought suit against William Lee, a sheriff, who had seized certain goods and merchandise which had been taken by plaintiff on writ of attachment. It was contended by the defendants in that case that the assignment made by the foreign corporation was void for the reason it had not complied with the domestication statutes of South Dakota, being section 3190, Comp. Laws. The Supreme Court of South Dakota held that the object of the statute was to bring foreign corporations within the jurisdiction of the courts of that state and to protect the citizens from imposition and fraud, and that the constitutional provisions and the legislative enactments of their state were not designed as a prohibition upon foreign corporations to contract in that state to the extent of declaring such contracts void, but were merely intended to furnish a means by which the citizens of that state could procure a personal judgment against foreign corporations which were their debtors; and, further, that while the statute did not prohibit the transaction of business until its provisions are complied with, yet, even though it had not complied with the domestication statutes, it was acting in a de facto capacity, within the state, until ousted by competent authority, and that the question of noncompliance with the statute as a condition precedent to the transaction of business could not be inquired into collaterally by a private person, but it must be done by a direct proceeding instituted by the state.

The Supreme Court of this state in the case of State ex rel. Short, Atty. Gen., v. Benevolent Investment & Relief Association, reported in 107 Okla. 228, 232 Pac. 35, wherein the state of Oklahoma, through its Attorney General, instituted escheat proceedings against said Benevolent Investment & Relief Association and its grantees of certain lands consisting of about 40 acres, known as Key West town site, which corporation had acquired, platted into town lots, and disposed of the same prior to the entry of Oklahoma into statehood, in construing section 11321, C. O. S. 1921, held that:

"Although a corporation may have acquired real estate in such a manner as to render it subject to be escheated to the state by a proper action begun for that purpose, yet, if such corporation shall, prior to the commencement of such proceeding to escheat, make a bona fide sale or conveyance of said

real estate for value, the purchaser at such sale will take good title thereto."

In that case this court discusses the case of Louisville School Board v. King, 127 Ky. 824, 107 S. W. 247, and states, in reference to that case, as follows:

"The question involved was upon a chain of title which included a deed from a Louisville banking company. The banking company had held the land in violation of the Constitution and laws of the state. After the transfer by this company, the commonwealth of Kentucky sought title to the land by escheat proceedings. The court held that good title had passed to the grantee of the banking company, and that in such case the corporation had power to transfer until escheat proceedings were begun. In the body of the opinion, it is said:

" '* * * The general rule is that, although a corporation may be disabled or forbidden by the organic or statute law of a state from holding land except for particular purposes, or from holding land beyond a prescribed limit or quantity, yet, if it does hold land in the face of such disabilities or prohibitions, its title will be good except as against the state alone; and that it will be deemed to have a good title until its title is invalidated in a direct proceeding instituted by the state for that purpose; and this rule prevents the title of the corporation from being assailed by its grantor or grantee.* * *'

"The object of the statute [section 11321, C. O. S. 1921] is to prevent the holding by the corporation."

In the instant case, upon the execution and delivery of the deed by the plaintiffs to the Pawnee Petroleum Corporation, title to the property described therein passed to said corporation. Under said domestication statutes, plaintiffs had the right to exercise their option in treating said contract as void in any suit which might be brought by said corporation to enforce the same. This election must necessarily be made before said contract of sale became fully executed. Eastlick v. Hayward Lumber & Investment Co. (Ariz.) 263 Pac. 936. Said contract of sale became fully executed upon the execution and delivery of the deed and the payment of the consideration. The plaintiffs' title in said property having passed to said corporation by said deed, and the state having brought no proceedings to question said title before the property was conveyed to the defendants Tom Slick, Inc., Welch, Acton & Brown, Inc., and C. O. Blunk, said grantee took good title thereto. Said title while it remained in the Pawnee Petroleum Corporation was subject at all times to the "constant risk of intervention by the state," yet, until the state intervened to escheat it,

the Pawnee Petroleum Corporation could transfer it to another, and passed good title to such purchaser. State v. Benevolent Investment & Relief Ass'n, 107 Okla. 228, 232 Pac. 35.

From an examination of our statutes and the authorities cited by counsel in their brief, we conclude that plaintiffs are estopped under section 5247, C. O. S. 1921, from denying the capacity of the Pawnee Petroleum Corporation to take title to the lands involved; that the title passed from the plaintiffs to the Pawnee Petroleum Corporation, and that plaintiffs were not and are not in a position, after the execution of the deed in question, being an executed contract, and after receiving the benefit therefrom, to deny, under said section 5247, C. O. S. 1921, the capacity of said Pawnee Petroleum Corporation to take the title to the premises herein, and that the deed in question is not void.

The judgment of the trial court is affirmed.

CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., concur. LESTER, V. C. J., and KORNEGAY, J., dissent. RILEY, J., absent.

Note.—See under (1) anno. 12 L. R. A. (N. S.) 1041; 21 L. R. A. (N. S.) 707; 12 R. C. L. pp. 79, 91; R. C. L. Perm. Supp. p. 3080; R. C. L. Pocket Part, title "Foreign Corporations," § 55.