## CHEROKEE PUBLIC SERVICE CO. v. HARRY CRAGIN LBR. CO.

No. 24313.   Oct. 1, 1935.

Kelly Brown and John W. Porter, for plaintiff in error.

Brooks, Brooks & Fleeson, for defendant in error.

PER CURIAM.   Harry Cragin Lumber Company recovered a judgment for $4,920.18 against Cherokee Public Service Company, a corporation, before a jury in the lower court, on an oral contract for the purchase of an oil derrick. The parties will be referred to as they appeared in the trial court, or as the lumber company and the service company.

S. R. Morgan & Company, a partnership composed of S. R. Morgan and M. B. Morgan, controlled the Cherokee Public Service Company, a corporation, which owned the Municipal Gas Company, a corporation. The service company and the gas company occupied the same office in Muskogee. M. B. Morgan was the president and general manager of the service company. J. O. Tilly was an employee of the service company until a few weeks before the events hereinafter chronicled arose. W. D. Egolf was an employee in the office, whose duties were mainly connected with the gas company, but who was paid by the service company.

Tilly testified that he made an agreement with M. B. Morgan to go to Wichita and buy oil and gas leases for the service company, the company to pay his and his wife's expenses and give him an interest in the leases. Tilly was also to buy leases for George Bardeen of Los Angeles, who was to give him expense money also. Morgan testified that the agreement was that he would put up one-third of the expenses, Bardeen would put up the rest, Tilly would put up his services, and Morgan would get personally a one-third interest in the leases.

Tilly went to Wichita and secured leases in his name, which were conditioned that they were not to be delivered until a well was drilled to a depth of 3,500 feet. These were put in escrow in a bank at Valley Center, Kan. He testified that he purchased leases on 1,600 acres at about $10 an acre for the service company and drew a draft for the purchase money, which was turned down, and then drew one on his father and M. B. Morgan, which was paid by S. R. Morgan through Egolf, and that the Morgans were to have a half interest. The service company paid Tilly and his wife $750 for their expenses while he was in Kansas.

Tilly purchased the derrick in the name of the service company from the lumber company, and at the latter's request obtained a letter of confirmation as to the purchase and terms, etc., from, and in the name of, the service company, signed by Egolf, who testified that M. B. Morgan told him to write it. Tilly thereafter drew a draft on the service company in favor of the lumber company for $3,500, which was turned down for "no authority."

M. B. Morgan sent Egolf to Wichita to

check up on Tilly. When Egolf reported that Tilly had not secured delivery of the leases, but had only conditional leases in escrow, Morgan ordered Egolf to have Tilly get unconditional leases. Tilly and Egolf got the leases changed, but Tilly refused to assign them to the service company because the draft had been turned down. Morgan wired Egolf to file suit against Tilly in the name of the service company, wired Tilly to "assign remaining half interest to Cherokee Company deliver to Egolf," wired the bank that "Tilly acting our agent only and has no authority to assign (to others)," and wired Tilly's hotel that "J. O. Tilly no longer connected with us." The telegram to the bank was signed "M. B. Morgan, Cherokee Service Co.," and the one to the hotel was signed "Cherokee Public Service Company."

W. R. Shaffer, the manager of the Valley Center office of the lumber company, testified that just previous to the above telegrams, Morgan was introduced as the president of the service company to him by Tilly at Valley Center, and said to him, "Anything that Oliver Tilly does up here, we will be behind him."

Tilly testified that Morgan told him and the cashier of the bank that when the leases were straightened up, he would take care of the draft, and that Morgan showed the cashier a financial statement of the service company.

Some months after the derrick was erected, a written agreement was entered into between Tilly, M. B. Morgan, and Bardeen for the organization of the Park Oil Company, a corporation, with $160,000 capital, the conveyance of all leases which Tilly had purchased to it, the sale of $60,000 of the stock, and the equal division of the remainder of the stock to the three parties. M. B. Morgan put up $5,000 and extended his credit for $5,000 for drilling tools to be purchased from the National Supply Company. Morgan testified that the credit manager of said supply company "had agreed before that to furnish me credit, that is, credit to S. R. Morgan and Co." He also testified that later S. R. Morgan offered the manager of the lumber company to protect said company to the extent of $900 for the cost of dismantling the derrick.

The service company was a Delaware corporation, not admitted to transact business in Kansas.

The service company, plaintiff in error, charges the judgment was erroneous (1) be-cause there was no evidence that Tilly was the company's agent; (2) because a resolution of the board of directors provided that no officer or agent could incur a debt over $500 without approval of the board; (3) because the contract was not binding for the reason that the service corporation was not admitted in Kansas; and (4) because an instruction was erroneous.

1. The question of agency was one of fact decided by the jury. There was competent evidence to support the jury's finding. Under the well-established rule, we cannot disturb this. M. B. Morgan's testimony about an agreement to have a personal one-third interest in the leases, and the evidence of the agreement concerning the stock in the Park Oil Company, cannot affect the issues between the lumber company and the service company. The agreement about the Park Company was made several months after the derrick was sold. There is no evidence that the lumber company knew about either of these agreements. Morgan may have been promoting these leases for the personal benefit of himself and his brother, but there is evidence that he was doing so, when the derrick was purchased, in his capacity as general manager of the service company, in the name of that company, and with its funds and employees, and apparently for its benefit. As general manager he had apparent authority to do this and the lumber company did not know otherwise. The service company placed him in his position and is responsible for his acts. If he did not act properly, that is a matter between the service company and him.

2. The service company next contends that a resolution of the board of directors prevented debts in excess of $500 being incurred by its officers or agents without the approval of the board. The service company's charter authorized it to buy leases and drill wells, and Morgan was its general manager. He had authority to do any act usual and necessary in the course of the company's business. Continental Supply Co. v. Sinclair Oil & Gas Co., 109 Okla. 178, 235 P. 471; Consolidated Flour Mills Co. v. Muegge, 127 Okla. 295, 260 P. 745; Long Bell Lumber Co. v. Hampton et al. (Tex. Civ. App.) 20 S. W. (2d) 1081. He could, in so far as necessary to prosecution of the company's business, delegate the necessary authority to a subordinate. Gerrish Dredging Co. v. Bethlehem Shipbuilding Corp., Ltd., 247 Mass. 162, 141 N. E. 867; St. Louis, Fort Scott & Wichita Ry. Co. v. Grove, 39 Kan. 731, 18 P. 958. The by-laws

are rules for the internal government of a corporation and are not binding upon outsiders unless they have knowledge thereof, or make same a part of their contract. Cummings v. State ex rel., 47 Okla. 627, 149 P. 864. The restriction in the by-laws could not invalidate a contract made by the manager, or his subordinate, in pursuance of the business of the company, the other party having no knowledge of the by-law. Sealey Oil Mill & Mfg. Co. v. Bishop Mfg. Co. (Tex. Com. App.) 235 S. W. 850; Barber v. Stromberg-Carlson Telephone Mfg. Co., 81 Neb. 517, 116 N. W. 157; Edwards v. Plains Light & Water Co., 49 Mont. 535, 143 P. 962. See Barnes et al. v. Black Diamond Coal Co., 101 Tenn. 354, 47 S. W. 498. The same reasoning applies to a resolution by the board. It follows that defendant's contention on this point is unsound. The restriction could not affect the lumber company, as there was no proof that said company knew about it.

3. The service company next contends that it is not liable because the contract is void, the company not having been admitted to do business in Kansas. The validity of a contract executed in Kansas by a corporation not authorized to do business there, which contract is to be performed there, is to be determined by the laws of that state. Plaintiff having failed to prove the Kansas statutes, we presume them to be the same as those of Oklahoma. Marx et al. v. Hefner, 46 Okla. 453, 149 P. 207. Our statutes merely provide that the nonadmitted corporation cannot sue on its contracts—not that the contracts are void. M. S. Cohn Gravel Co. v. Southern Surety Co., 129 Okla. 171, 264 P. 206; McMillan et ux. v. Pawnee Petroleum Co., 151 Okla. 4, 1 P. (2d) 775. The statute puts a penalty on the nonadmitted company seeking to recover on its contracts—not on the resident who seeks to recover against the corporation.

4. The second instruction given charged the jury that the only issue was whether Tilly and Egolf had authority to bind the service corporation, and charged that verdict should be for the lumber company if the jury found that "at the time of the purchase of the rig by said witness Tilly, or at the time of the written confirmation of said order and purchase by said witness Egolf, either said Tilly or Egolf was the duly constituted and authorized agent of the defendant." We find no fault with this in-

struction. Plaintiff had a right to prove the agency of either or both by all the acts and surrounding circumstances. It was not necessary to plaintiff's case that both be proven agents. The verdict amounts to a finding that either or both were authorized, and there being evidence that both were authorized, we cannot see how this instruction harmed the defendant.

Judgment affirmed.

The Supreme Court acknowledges the aid of Attorneys Byrne A. Bowman, Mont Powell, and R. R. Bell in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Bowman and approved by Mr. Powell and Mr. Bell, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, PHELPS, and CORN, JJ., concur.