KURZ v. FARMERS UNITED CO-OPERATIVE POOL.

No. 32096.　June 24, 1947.

Rehearing Denied Sept. 30, 1947.

*184 P. 2d 790.*

Cook & Bingaman, of Purcell, for plaintiff in error.

A. H. Huggins, of Norman, for defendant in error.

ARNOLD, J. Action by Ella Kurz against Farmers United Co-Operative Pool, a corporation, to set aside a mineral deed and quiet title to the land therein described.

Plaintiff commenced her action June 1, 1943, by filing her petition in the district court of McClain county wherein she alleged that she was the owner and in the quiet and peaceable possession of the S.E.¼ of the S.W.¼; S.½ of the S.E.¼; S.E.¼ of the S.W.¼ of the S.W.¼ of section 7, and the E.½ of the N.E.¼ of the N.E.¼ of section 18, all in township 6 north, range 3 west in McClain county, Okla.; that defendant claimed some right, title or interest in and to the above described premises which constitutes a cloud upon her title; that said claim of defendant is based upon a certain mineral deed executed by plaintiff to defendant January 11, 1935; that defendant's claim under said deed is without merit for the reason that the same was obtained by the fraudulent representations of defendant's agents, W. L. Lurry and Gus Payne; that said fraudulent representations were relied upon by plaintiff as being true and that she acted thereon in the execution of said mineral deed; that plaintiff tendered into court $18 which she had received as dividends from the defendant and tendered into court nine shares of stock which she had received in the transaction between her and defendant's agents and on which stock said dividends had been paid. By amendments thereafter made to her petition, plaintiff alleged a material alteration in the deed without her knowledge or consent and that defendant was without authority to take title to the lands or any interest therein under the deed of plaintiff for the reason that said defendant procured its charter from the State of Oklahoma by fraud.

Defendant's answer consisted of a general denial, except it admitted its corporate existence, and specifically denied under oath the agency alleged by plaintiff. It affirmatively alleged a 67½-acre interest in the minerals in and under the premises described in plaintiff's petition by reason of the deed from plaintiff to defendant and pleaded laches and the statute of limitations.

The trial of the case resulted in a judgment in favor of defendant.

Assignments of error relied on by plaintiff are thus stated in her brief:

"(1) Lurry and Payne were the agents of the defendant in error.

"(2) The deed relied on by the defendant in error was obtained by (A) the fraud of its agents; (B) fraud of the defendant in that the grantee was disqualified to take title.

"(3) The deed replied on was materially altered by the defendant and thereby vitiated.

"(4) The plaintiff's cause of action is not barred by laches or limitation."

Lurry and Payne were both stockholders in defendant corporation at the time of the transaction here in question and Payne was also one of its officers. They were provided with blank forms of mineral deeds and with original and duplicate blank forms for taking subscriptions for stock in defendant corporation. They used these blank forms in closing their deal with plaintiff. Without further detailing the evidence on this question of agency, and for the purpose of considering their alleged fraudulent representations, we will assume that they were acting in an authorized representative capacity.

Plaintiff was her own principal wit-

ness. Her testimony is very voluminous, covering more than 50 pages of the case-made. Summarizing her testimony it is disclosed that the alleged fraudulent representations so made and relied on by her were: that there were $3,000-000 behind the pool; that she would get $9 each year on each of her nine shares of stock; that she would get a bonus of $300 to $350 within a year and a half; that the income from her shares would make a living for her and her family; that it wouldn't be too long before drilling commenced on some one's land; that the Farmers' Union was behind this organization; that defendant was pooling only land with oil and gas prospects.

Plaintiff testified that a carbon copy of her application for shares in defendant corporation was given to her and it had been in her possession at all times since January 11, 1935, until she turned it over to her attorney. This application contains this provision:

"The accompanying Mineral Deed is to be effective only when said Co-operative Pool has accepted said deed and has issued to the undersigned 9 shares of the Company stock, Pool No. 2, fully paid and nonassessable. The profits in which I am/we are to share shall be limited to the income from the tracts acquired in that portion of said Farmers United Co-operative Pool designated as Pool No. 2."

At the time her application for shares was made to defendant, the lands of plaintiff were under lease to Phillips Petroleum Corporation and Magnolia Petroleum Corporation. On July 8, 1936, plaintiff wrote a letter to defendant complaining that the lease rentals in the sum of $90 had not been paid to her and demanding that defendant send her a bank draft for that amount. In that letter she claimed that defendant's agents had misrepresented things to her, but the only misrepresentations stated were that she was to receive $90 in two or three months from January 11, 1935, and that she would receive a bonus of $3 to $5 in less than a year. This letter, composed and written by plaintiff prac-

tically 18 months after making her application for shares and executing the mineral deed, shows that the misrepresentations on which she relied related to dividends of $1 each on her shares and a bonus of $3 to $5 instead of $300 to $350, as testified on the trial. She received a dividend check in April, 1936, and another in December, 1936, each for the sum of $9. In view of the express provision above quoted from her application for shares, together with the express statements in this letter, it is apparent that the other statements now attributed to defendant's agents were not the inducing cause of her buying shares in defendant corporation.

All of the testimony of the plaintiff in support of her allegations of fraudulent representations is substantially denied by the testimony of Lurry.

Plaintiff's contention that the mineral deed was materially altered is based upon her testimony that originally the first call in the description of the land in the deed read: "SE¼ of SE¼," and changed to "SE¼ of the SW¼." This alteration was made in the same handwriting and with the same kind of ink as the balance of the description. Plaintiff testified positively that this alteration in the description was made without her knowledge and consent. W. L. Lurry, who wrote the description in the mineral deed and who made the alteration, testified as positively that plaintiff knew of and consented to the alteration. It is further disclosed by the testimony of plaintiff that the land described in the mineral deed, as altered, correctly described the land owned by her and that it was her intention to convey the mineral interest in all of the lands owned by her in McClain county. The mineral deed had been of record in McClain county for practically 18 months prior to the date of the letter which plaintiff wrote to the defendant corporation in July, 1936, yet in that letter, in which she complained of the alleged fraud of the agents in the transaction, no mention was made of the altered

description. The carbon copy of her application correctly described the land.

The alleged fraud of the corporation in accepting the mineral deed in violation of its corporate powers is a matter of which plaintiff may not complain. The state alone can question as ultra vires the acquiring of title to and holding of realty by a domestic corporation. The plaintiff, who, with many others, entered into a pooling of oil and gas royalty interests by executing a mineral deed, could not later, in an action to cancel a deed, question authority of the corporation operating the pool to hold mineral rights in realty. Panhandle Co-Operative Royalty Co. et al. v. Perry, 183 Okla. 405, 82 P. 2d 823; Farmers Union Co-Operative Royalty Co. et al. v. Southward et al., 183 Okla. 402, 82 P. 2d 819.

Fraud is never presumed but must be established by clear, satisfactory and convincing evidence. The judgment of the trial court in an action of equitable cognizance will not be disturbed on appeal unless clearly against the weight of the evidence.

We cannot say under the state of the evidence that the judgment of the trial court was clearly against the weight thereof.

Affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, BAYLESS, WELCH, and GIBSON, JJ., concur.

Rehearing Denied Sept. 30, 1947.