## SIMLER v. WILSON et al.

### Civ. No. 5619.

United States District Court,
W. D. Oklahoma.

March 5, 1953.

---

Leslie L. Conner and Arnold B. Britton, Oklahoma City, Okl., and James E. Grigsby, Oklahoma City, Okl., for plaintiff.

Suits & Weiss, Oklahoma City, Okl., for defendants.

Omer Louellen, Hinton, Okl., for State of Oklahoma.

WALLACE, District Judge.

The plaintiff, A. J. Simler, a resident of Arkansas, brings this action, under the Declaratory Judgment Act,[1] against the Sisters of St. Francis, a Missouri Corporation, the residuary legatee in the "Will" of Birdine Fletcher, and against W. H. Wilson, executor of this Will. The plaintiff requests this court to construe this Will and to judicially determine whether or not under Oklahoma law the defendant religious corporation can receive and hold certain real estate of the decedent which is situate outside the incorporated limits of any city or town.

The State, through the County Attorney of Caddo County, filed its application to intervene.[2]

The first question to be determined is whether or not this court has jurisdiction over the original parties to the suit.

Although the Will in question is now being probated in the state court doubt-

---

1. 28 U.S.C.A. § 2201 provides:

"In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." Also, see § 2202.

2. Fed.Rules Civ.Proc. rule 24, 28 U.S. C.A.

less this court has the authority to construe the provisions of the Will.

In Ferguson v. Patterson [3] the court held that where an independent action for construction of a will could have been maintained in a court of general jurisdiction in the State of Oklahoma, and diversity of citizenship of parties existed and requisite jurisdictional amount was involved, the federal district court has jurisdiction to hear and determine action to construe the will.

However, the primary problem now before us is whether under the Oklahoma law the plaintiff, a brother of the testatrix, can challenge the right of the defendant religious corporation to take and hold such real estate.

In 13 Am.Jur. § 782 it is said:

"The decisions upon the right of the heirs or next of kin of a testator to attack a devise to a corporation on account of its incapacity to take and hold real estate are conflicting. *The better and majority rule is that the question of the legal capacity of a corporation to take a devise of realty in excess of the amount prescribed by its charter or by reason of its incapacity to take and hold real estate, no restrictions on the power to devise being involved, cannot be raised collaterally by private persons, such as the testa-*

*tor's heirs or next of kin, but can be raised only by the state in a direct proceeding.*" (Emphasis supplied.)

The majority and minority rules regarding the "right of heirs or next of kin to attack devise to corporation on ground of its incapacity to take" are analyzed in 69 A.L.R. 1359. There it is stated:

"The rule adopted in a majority of jurisdictions in the United States is that the question of the legal capacity of a corporation to take a devise of realty cannot be raised collaterally by the testator's heirs or next of kin, but can be raised only by the state in a direct proceeding." [4]

It is further stated:

"In several jurisdictions, however, it is held that the heirs or next of kin of the testator may attack the validity of a devise to a corporation on the ground of its incapacity to take." [5]

It is incumbent upon this court to determine which rule Oklahoma follows inasmuch as we have no recorded cases wherein the Oklahoma Supreme Court has passed on this specific question.

The underlying difference in the rationale of the two views is aptly illustrated in the Kansas case of Kennett v. Kidd. [6] In holding that an heir at law had the right to dispute a corporation's power to take title to devised realty the court said: [7]

---

3. 10 Cir., 1951, 191 F.2d 584.

It should be observed that the Declaratory Judgment Act does not enlarge the jurisdiction of the federal courts, but merely creates a new form of procedure by which declaratory judgments may be rendered by federal courts in exercise of their jurisdiction to decide cases or controversies, both at law and in equity, which judiciary acts have already conferred.

Logically, in exercising its jurisdiction under the Declaratory Judgment Act, the court has the duty to ascertain whether the questions in controversy between the parties to the federal court suit can better be settled in proceedings pending in the state court. Such a question should be resolved by a determination of whether there is such a plain, adequate, and speedy remedy afforded the federal court plaintiff in a pending state court action

that a declaratory judgment will serve no useful purpose. Guardian Life Ins. Co. of America v. Kortz, 10 Cir., 1945, 151 F.2d 582.

4. The annotator lists Delaware, Illinois, Maine, Maryland, Massachusetts, Mississippi, Pennsylvania, Tennessee and Utah as adherents to the majority rule. However, as to Illinois cf. St. Peter's Roman Catholic Congregation v. Germain, 104 Ill. 440.

5. The annotator lists Kansas, Kentucky, New Jersey, New York, North Carolina, Rhode Island and Texas as followers of the minority rule.

6. 1912, 87 Kan. 652, 125 P. 36, 44 L.R.A., N.S., 544; judgment affirmed on rehearing at 1913, 89 Kan. 4, 130 P. 691, 44 L.R.A.,N.S., 549.

7. 125 P. 36, 39.

"As a general rule, when corporations do acts or attempt to hold property ultra vires, private parties may not be heard to complain for the reason that corporations, being the creatures of the state and subject to its sovereign will, are to be corrected only by the state. The rule more frequently applies when the assumed powers render the conveyance voidable and not absolutely void. Approaching the matter from the point of reason and logic, we have this situation: *The law directs how property undisposed of according to law shall descend at the death of the owner. The law prohibits the devisee in question from taking and holding the property sought to be devised by the testator. Such conveyance is not voidable but void; therefore the persons whom the law has selected as the proper heirs to this property have a right to object to being deprived thereof, and have the right to assert their statutory claim in opposition to that of the camp* [corporation] *which has no legal basis whatever.*" (Emphasis and insert supplied.)

■ Thus, it is clearly depicted that whether or not an heir, such as the plaintiff in this action, can maintain a suit of this nature, is directly dependent upon whether such devise under the governing substantive law is deemed to be *void* or merely *voidable*. If such a devise is deemed void, unquestionably under the logic just quoted an heir should be permitted to question a corporation's right to take title;[8] if such a devise is merely voidable then the state alone can bring suit.

■ The pertinent section of the Oklahoma Constitution provides:[9]

"No corporation shall be created or licensed in this State for the purpose of buying, acquiring, trading, or dealing in real estate other than real estate located in incorporated cities and towns and as additions thereto; nor shall any corporation doing business in this State buy, acquire, trade, or deal in real estate for any purpose except such as may be located in such towns and cities and as additions to such towns and cities, and further *except such as shall be necessary and proper for carrying on the business for which it was chartered or licensed * * *.*" (Emphasis supplied.)

An examination of the cases construing this particular provision unmistakably indicates that insofar as this constitutional prohibition is concerned any transfer of title inter vivos in violation thereof is not void, but is voidable, and then only upon a proper action brought by the state.[10]

In Texas Co. v. State ex rel. Coryell, County Atty., Creek County the Oklahoma Supreme Court said:[11]

"The effect of the constitutional limitation and the language of the statute making unlawful the acquiring of land in violation of such limitation is to make voidable and not void conveyances made to corporations in contravention thereof, and voidable only

---

8. If the statute makes the conveyance absolutely void such conveyance would be subject to being attacked collaterally. This principle is enunciated in Hanna v. Kelsey Realty Co., 1911, 145 Wis. 276, 129 N.W. 1080, 33 L.R.A.,N.S., 355 wherein the court said: "Where a deed of land is made to a foreign corporation which has not complied with St. 1898 § 1770b, prohibiting a foreign corporation from transacting business, or acquiring, holding, or disposing of property in the state without first complying with the statute, and declaring that every contract relating to property entered into before a compliance with the law shall be 'wholly void,' the deed is a nullity and a prior mortgagee of the vendor under an unrecorded mortgage may show the fact of noncompliance and take the benefit thereof; the words 'wholly void' meaning absolutely void and a nullity." cf. 19 C.J.S., Corporations, § 1113.

9. Art. XXII, § 2, Const. of State of Okla.

10. See Kurz v. Farmers United Co-operative Pool, 1947, 199 Okl. 224, 184 P.2d 790. See 19 C.J.S., Corporations, § 1112.

11. 1947, 198 Okl. 565, 180 P.2d 631, 637.

in a direct proceeding by the State. In recognition of this rule, which is of general acceptance * * * this court * * * quotes with approval from Louisville School Board et al. v. King, 127 Ky. 824, 107 S.W.2d 247, 15 L.R.A.,N.S., 379 the following statement: ' "The general rule is that, although a corporation may be disabled or forbidden by the organic or statute law of a state from holding land except for particular purposes, or from holding land beyond a prescribed limit or quantity, yet, if it does hold land in the face of such disabilities or prohibitions, its title will be good except as against the state alone; and that it will be deemed to have a good title until its title is invalidated in a direct proceeding instituted by the state for that purpose; and this rule prevents the title of the corporation from being assailed by its grantor or grantee." ' "

Accordingly, it was held in Local Inv. Co. v. Humes, that:[12]

"* * * it appears to be well settled that a conveyance to a corporation in violation of said section of the Constitution [§ 2, Art. 22] is not absolutely void, but merely voidable in its ordinary aspects. [Citing cases.]" (Insert supplied.)

Also, in Union Trust Co. v. Hendrickson[13] the court said:

"The law seems to be well established by the great weight of authority that, if a corporation is not authorized to acquire real estate except in a limited amount for prescribed purposes, the acquisition of additional property cannot be questioned by a private individual, but can only be questioned by the state. [Citing cases.]"

In an Oklahoma case involving the taking of title by a County this same principle was applied:[14]

"The mere fact that the county may have taken a deed conveying to it the fee-simple title for a purpose not authorized by law, does not render the deed absolutely void. Neither the parties who conveyed the land, nor their heirs can complain or maintain an action to set aside the deed, or recover the land; the state alone can, as a general rule, complain, and it alone can maintain an action to divest the county of title thereto. * * * The Supreme Court of the United States in the case of Reynolds v. First Nat. Bank, 112 U.S. 405, 5 S.Ct. 213, 217, 28 L.Ed. 733, held: 'Where a corporation is incompetent by its charter to take a title to real estate, a conveyance to it is not void, but only voidable. The sovereign alone can object. It is valid until assailed in a direct proceeding instituted for that purpose.' * * *"

In Brown v. Capps, the court said:[15]

"* * * The trial court found that plaintiff could not raise the question of the constitutional inhibition of the defendants under section 2, article 22, of the Constitution, to hold lands, as this question could only be raised by the state. This question is also well settled in this jurisdiction, contrary to the contention of plaintiff. * * *"

In the case at bar, in addition to the constitutional provision limiting a corporation's right to hold, we must also consider the effect of section 543 of Title

12. 1915, 51 Okl. 251, 151 P. 878, 879.

13. 1918, 69 Okl. 277, 172 P. 440, 441.

14. Benedict v. Board of Com'rs of Lincoln County, 1932, 161 Okl. 50, 17 P.2d 454, 455.

15. 1933, 164 Okl. 91, 22 P.2d 1008, 1010. In State ex rel. Short, Atty. Gen. v. Benevolent Inv. & Relief Ass'n, 1925, 107 Okl. 228, 232 P. 35, 37 A.L.R. 190 the court held that a conveyance of real estate by the owner to a corporation duly organized under the laws of the territory of Oklahoma, or of the State of Oklahoma, may vest title to such real estate in such corporation, although the acquiring or holding of such real estate be beyond the power granted to such corporation by its charter.

18, Okl.Stat.Ann., which pertains specifically to religious, educational and benevolent corporations. This section provides:

"All such corporations may hold all the property of the association owned prior to incorporation, as well as that acquired thereafter in any manner and transact all business relative thereto; *but no such corporation shall own or hold more real property than may be reasonably necessary for the business and objects of the said association.*" (Emphasis supplied.)

In the only reported case construing this statute the court was not compelled to pass upon the question now before us inasmuch as the court disposed of the case on its merits holding that the finding of the trial court that such property was reasonably necessary for the objects of the corporation and for carrying on the business for which it was chartered, as required by the constitutional and statutory provisions, was not against the clear weight of the evidence.[16]

■ This court sees no logical basis upon which to distinguish a passing of title inter vivos from a passing of title through devise insofar as the character of the title transferred is concerned. The law conclusively establishes that conveyances pass at least a voidable title;[17] by analogy it seems inescapable that a devise under a valid will also transfers at least a voidable title; this places Oklahoma in harmony with the rule recognized in a majority of the states.

The plaintiff points out that the Business Corporation Act of 1947 must not be overlooked in determining the force to be given these previous decisions.[18]

The court has carefully studied the 1947 Act and finds nothing in it which alters the substantive principle just discussed.

The legislature not only failed to repeal the special statutes pertaining to religious corporations,[19] but by implication[20] left the law undisturbed insofar as the question in the case at bar is concerned.

Section 1.20 of the 1947 Act provides:

"a. No corporation of any sort, whether coming within the general scope of this Act or not, shall, except as herein provided, own, hold, or take any real estate located in this State outside of any incorporated city, or town, or any addition thereto.

"b. Nothing in this Act shall be construed as prohibiting the owning, holding, or taking of:

---

16. Pelter v. Sacred Heart Catholic Church, Inc., 1939, 186 Okl. 45, 96 P.2d 24.
    At page 25 of 96 P.2d the court said: "The church takes the position at the outset that the residuary legatee is not entitled to challenge the right of the corporation either to take by devise, or to hold the particular property involved, but contends that it is a matter that the state alone can raise. But under the view we take of the case we do not deem it necessary to decide, or to intimate an opinion on, this matter."

17. This is further emphasized by the fact that although a corporation may have acquired real estate in such a manner as to render it subject to be escheated to the state by a proper action begun for that purpose, yet if such corporation shall, prior to the commencement of such proceeding to escheat, make a bona fide sale or conveyance of said real estate for value, the purchaser at such sale will take good title thereto. State ex rel. Short, Atty. Gen. v. Benevolent Inv. & Relief Ass'n, footnote 15 supra. Accord, McMillan v. Pawnee Petroleum Corporation, 1931, 151 Okl. 4, 1 P.2d 775.

18. 18 Okl.Stat.Ann. §§ 1.1 to 1.250.

19. 18 Okl.Stat.Ann. § 541 et seq.

20. The following Draftsman's Note appears in connection with section 1.19(6) of the 1947 Act relating to the power of a domestic corporation to acquire real estate by purchase, will or otherwise:
    "(6) The limitations (sic) in the Constitution was inserted because of the rigid provisions in Art. XXII § 2 thereof. We thought of leaving this off and annexing a clause similar to the one used by Illinois and Pennsylvania at the end of the respective sub-sections. But Const. Art. XXII, § 2, is so broad that trouble might be experienced thereby. It is thought to be better to specify the constitutional limitation and leave it to the courts."

"(1) *Such real estate as is necessary and proper for carrying on the business for which any corporation has been lawfully formed or domesticated in this State;*" (Emphasis supplied.)

Thus, this section just iterates in substance the constitutional mandate, and as before leaves with the courts the question of determining in each individual case just what real property is necessary and proper for the legitimate function of the corporation.

■ It is the opinion of this court that even though a testatrix devises real estate to a religious corporation which in fact is not necessary and proper for the carrying on of its business that such a devise is not void but voidable; only the State can question the right of the corporation to hold,[21] and even then the State must bear the burden of proof in showing such real estate is not "reasonably necessary for the business and objects of the said corporation".[22]

Inasmuch as the plaintiff is not the proper party to question the defendant corporation's right to benefit from the devise in

question, this action will be dismissed. It necessarily follows that the application to intervene is hereby overruled, as there is no pending action subject to intervention.[23]

21. In this connection it is noteworthy that the constitutional prohibition of art. XXII, § 2, is not self-executing and even the States right to bring an action must be based upon specific statutory authority enacted for such purpose. Texas Co. case footnote 11 supra; Sheridan Oil Co. v. Superior Court of Creek County, 1938, 183 Okl. 372, 82 P.2d 832; Parwal Inv. Co. v. State, 1918, 71 Okl. 121, 175 P. 514;

The Oklahoma Escheat statutes are 84 Okl.Stat.Ann. §§ 271–277. Section 272 is now repealed. Cf. 18 Okl.Stat.Ann. § 1.21 to 1.25.

22. Footnote 9 supra. Cf. 19 C.J.S., Corporations, § 1088.

For definitions of " 'necessary and proper' " as applied to corporations generally see the Texas Co. case, footnote 11 supra; Bailey v. Banister, 10 Cir., 200 F.2d 683; and Marland v. Gillespie, 168 Okl. 376, 33 P.2d 207.

23. In Levenson v. Little, D.C.N.Y., 75 F. Supp. 575, 576 the court said: "Intervention, however, presupposes the actual pendency of a lawsuit in a court of competent jurisdiction in which the intervener is to be treated as an original party, bound by the proceedings as he finds them. [Citing cases.] There can be no intervention if there is no pending lawsuit. Intervention cannot give life to a lawsuit which does not actually exist. Nor can it create jurisdiction where no jurisdiction exists. * * * "

Also, in Hofheimer v. McIntee, 7 Cir., 179 F.2d 789, 791 the court said: "One alternative of appellant's motion was that he be admitted as intervenor. We assume, for the purpose of this decision, that he has a lien upon the fruits of the suit to the extent of one-third thereof, secured by a lien upon certain stock by virtue of the assignment. We assume further that, as such lienee, he had a right to intervene for the enforcement of that lien in any proper proceedings. But intervention is ancillary and subordinate to the main cause and whenever a suit ceases to exist by virtue of dismissal by the court, there remains no longer any action in which there can be intervention. 'An existing suit within the court's jurisdiction is a prerequisite of an intervention, which is an ancillary proceeding in an already instituted suit.' [Citing cases.]"